**EVANS SERVICES, INC., Petitioner, Cross-Respondent,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent, Cross-Petitioner.**

No. 86–7066.

United States Court of Appeals, Eleventh Circuit.

Feb. 24, 1987.

Sydney F. Frazier, Jr., Cabaniss, Johnston, Gardner, Dumas & O'Neal, Birmingham, Ala., for petitioner, cross-respondent.

Elliott Moore, Katharine Colgan, Paul Spielberg, N.L.R.B., Appellate Court Branch, Washington, D.C., for respondent, cross-petitioner.

Before GODBOLD and VANCE, Circuit Judges, and SWYGERT,* Senior Circuit Judge.

SWYGERT, Senior Circuit Judge:

This appeal is before the court on a petition for review filed by Evans Services, Inc. and a cross-application for enforcement of an order of the National Labor Relations Board ("the NLRB" or "the Board"). In a supplemental backpay proceeding, the Board charged Evans Services with liability for unfair labor practice orders previously issued against Evans Plumbing Company. The Board based its order on a finding that Evans Services was either an alter ego or a successor of Evans Plumbing. Because the administrative record adequately supports the NLRB's finding of successorship, we affirm and grant enforcement.

I

Because a successorship or alter ego inquiry is fact-intensive, a detailed factual discussion of this case is in order. This case arose when Evans Plumbing discharged two employees. Evans Plumbing was a family-owned corporation engaged in the plumbing and heating business in Birmingham, Alabama. L.J. Mancin, Jr., president of the company, originally owned all of the Evans Plumbing's stock. His wife, Elizabeth Mancin, served as secretary and she, L.J., and their son, John Mancin III, were the directors. When L.J. Mancin, Jr. died in the mid-1970s, all of the stock was placed in a trust for Elizabeth. John Mancin III succeeded his father as president of the company and Elizabeth became chair of

* Honorable Luther M. Swygert, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

the board of directors and the company's secretary-treasurer. John Mancin III and Charles Denaburg, the trustee of Elizabeth Mancin's trust, assumed the remaining board positions.

In late 1979, two of Evans Plumbing's employees, Jack T. Lee and Frederick James Meeks, discovered that the company had not been paying into their vacation fund accounts, as their collective bargaining agreement required. In February 1980, Lee and Meeks organized a meeting between the employees and company president John Mancin III to discuss the matter and two days later Mancin discharged Lee and Meeks.

Lee and Meeks promptly filed charges with the NLRB. An administrative law judge found that the discharges violated sections 8(a)(1) and (3) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(1), (3) ("the Act"), and the Board ordered Evans Plumbing to reinstate the two men and to compensate them for their lost earnings. The Fifth Circuit granted summary enforcement of the Board's order. *NLRB v. Evans Plumbing Co.*, 639 F.2d 291, 293 (5th Cir.1981).

When Evans Plumbing failed to comply with the Board's backpay order, the General Counsel initiated a supplemental backpay proceeding. Evans Plumbing had ceased doing business on May 2, 1980 and had subsequently declared bankruptcy. Shortly thereafter, Evans Services, Inc., a new corporation, began operating at Evans Plumbing's old location. The Board issued a backpay specification on February 15, 1985, naming both Evans Plumbing and Evans Services as respondents and charging Evans Services with liability as Evans Plumbing's alter ego or successor.

## II

Evans Services' appeal of the Board's order raises two issues. First, the company disputes the Board's finding of successorship or alter ego. Second, it contends that the NLRB may not properly impose personal liability upon "officers and agents" of Evans Services for backpay assessed in this case because those individuals were not named in the backpay specification or the underlying unfair labor practice charge filed with the Board.

We can dispose of the second issue at the outset. The administrative law judge concluded that due process barred imposition of individual liability upon Elizabeth Mancin and John Mancin III. Moreover, at oral argument, counsel for the Board admitted that the language of the order, which included the "officers and agents" [1] of Evans Services, only referred to those individuals in their corporate capacities. She stated that the Board would not object if this court modified the language of the order to clarify that the officers and agents of Evans Services are not individually liable for the backpay awards. In view of this concession, we limit the Board's order to apply only to Evans Services and not to its officers and agents as individuals.

The only issue that remains is Evans Services' status as a successor to Evans Plumbing.[2] The administrative law judge concluded that Evans Services was a successor employer based on the following findings. Evans Plumbing Company, as a plumbing service company, expanded into small commercial jobs and home remodeling, and finally undertook several large commercial jobs. The company's finances suffered when the remodeling and large commercial contracts resulted in substantial losses.

In early 1979, Elizabeth Mancin loaned the troubled company $57,000, taking a security interest in all of its assets. On April 11, 1980, the board of directors passed a resolution that authorized John Mancin III

---

**1.** The Board's Supplemental Decision and Order applied to:

> the Respondent, Evans Plumbing Co. and/or its alter ego and/or successor Evans Services, Inc., Birmingham, Alabama, its officers, agents, successors, and assigns, . . .

278 N.L.R.B. No. 9.

**2.** Because we find that substantial evidence supports the Board's successorship determination, we need not discuss the alter ego finding.

to file bankruptcy for the company. Elizabeth Mancin foreclosed on her security interest on May 4, 1980 after Evans Plumbing had defaulted on her loan. She then purchased the company's assets at the foreclosure sale and incorporated Evans Services the following day, contributing the Evans Plumbing assets to Evans Services as capital. Lois Mancin contributed an additional $10,000 to the new company. Elizabeth Mancin held eighty percent of the shares and was named vice-president. Lois held twenty percent of the shares and became secretary-treasurer and her husband, John Mancin III, served as president. Evans Plumbing filed a voluntary petition in bankruptcy on August 18, 1980.

The new company used the twelve motor vehicles that had belonged to Evans Plumbing and paid the notes on several of them. While Evans Services employed fewer people, the majority of its employees had previously worked for Evans Plumbing and both corporations performed plumbing work.

The foregoing facts led the administrative law judge to conclude that Evans Services "stepped into the shoes of Evans Plumbing Company," with knowledge of the unfair labor practices committed by Evans Plumbing. Accordingly, he held Evans Services liable as a successor, and the Board adopted the administrative law judge's recommended order.

### III

■ On review, we uphold the Board's factual findings if they are supported by "substantial evidence on the record considered as a whole." 29 U.S.C. § 160(e). In addition, we defer to the Board's conclusions of law if they are based on a reasonable construction of the Act. *NLRB v. Local Union No. 103,* 434 U.S. 335, 350, 98 S.Ct. 651, 660, 54 L.Ed.2d 586 (1978).

The administrative law judge and the Board relied upon *Golden State Bottling Co. v. NLRB,* 414 U.S. 168, 94 S.Ct. 414, 38 L.Ed.2d 388 (1973), and *Perma Vinyl Corp.,* 164 N.L.R.B. 968 (1967), in determining the successorship issue. In *Golden*

*State Bottling,* the Supreme Court held that a bona fide successor could be held liable to remedy the unfair labor practices of its predecessor, if the successor knew of the labor law violations at the time the business changed hands. 414 U.S. at 180, 94 S.Ct. at 423. The Court explained that the Board has broad discretion to issue remedial orders against successor corporations, not because the change in ownership is an unfair labor practice, but "because the Board is obligated to effectuate the policies of the Act." *Id.* at 177, 94 S.Ct. at 421. Thus, the Board has power under the Act to protect "employee victims of unfair labor practices who, because of their unlawful discharge, are now without meaningful remedy when title to the employing business operation changes hands." *Id.* at 181, 94 S.Ct. at 423 (quoting *Perma Vinyl,* 164 N.L.R.B. at 967).

The compelling policies underlying the Act, "[a]voidance of labor strife, prevention of a deterrent effect on the exercise [of employees' rights under the Act], and protection for the victimized employee," far outweigh the cost of imposing liability on a successor employer. *Id.* at 185, 94 S.Ct. at 425. The Court concluded that because liability attaches only to a successor who has notice, that successor can offset the potential cost of the liability. The successor can seek an indemnity clause or a reduction in the purchase price at the time of the change in ownership. *Id.*

■ A finding of successorship, therefore, involves a two-step inquiry. First, the Board must find that the new business retains common aspects of the prior business sufficient to allow the legal conclusion of "successorship." Second, the Board must conclude that the successor knew of the unfair labor practices at the time it purchased the business. *Id.*

■ Here, the evidence more than satisfies the first requirement. The boards of directors of the two corporations were primarily the same. John Mancin III was president of both the old and new businesses. Elizabeth Mancin was beneficial owner

of Evans Plumbing and the majority stockholder of Evans Services. The same equipment, the same location, essentially the same line of business, many of the same employees, and even the same telephone directory advertisement linked the two corporations. Moreover, Evans Services sprang into existence the day after Evans Plumbing closed its doors. This evidence led the Board to the inevitable conclusion that Evans Services merely "stepped into the shoes" of Evans Plumbing.

■ Evans Services primarily contests the second step of the inquiry: the notice issue. It contends that the transfer of ownership occurred at the time Elizabeth Mancin made her secured loan to Evans Plumbing. As a result, she had no notice of the unfair labor practices because they were not committed until eleven months later. Evans Services cites only a few bankruptcy cases for the proposition that the transfer of ownership occurred at the time the security interest was executed. These cases, however, provide little guidance in the present context. For example, the company relies upon *In re Madrid*, 725 F.2d 1197 (9th Cir.), *cert. denied*, 469 U.S. 833, 105 S.Ct. 125, 83 L.Ed.2d 66 (1984), which dealt with the question of whether a nonjudicial foreclosure sale of a debtor's home may be set aside under 11 U.S.C. § 548(a) of the Bankruptcy Code. The Ninth Circuit refused to set the sale aside as a fraudulent conveyance because it determined that a "transfer" *for bankruptcy purposes* occurred at the time the security interest was perfected, which was more than one year prior to the filing of bankruptcy. 725 F.2d at 1200.[3]

■ The determination of transfer under the Bankruptcy Code simply does not apply here.[4] It was not until Elizabeth Mancin chose to pour those assets into her new company that a successorship liability even arose. For successorship analysis to apply, there must be a new company to *succeed* the old company. In other words, to find successorship the Board will consider not merely a change in title to the assets, but other factors, as well. These include whether the new employer continues the business without substantial change and whether it employs substantially the same workforce. *See, e.g., NLRB v. Jarm Enterprises, Inc.*, 785 F.2d 195, 200 (7th Cir. 1986) (citing non-exhaustive list of successorship factors). In this case, at the time of the loan, Evans Plumbing still existed— the company had not yet changed hands— and the security interest had no effect on the control of that company. Therefore, the time of the security interest bears no legal significance in this case.

It only makes sense to question whether there was notice at the time of the formation of the new business. Elizabeth Mancin's knowledge of the unremedied labor violations at the time of that decision presents the relevant question. That was when she could choose what to do with those assets or the sale's proceeds.[5]

■ The Board found that Elizabeth Mancin had notice at the time Evans Services "stepped into the shoes" of Evans Plumbing on May 6, 1980. Elizabeth Mancin was the beneficial owner of Evans Plumbing at the time of the discriminatory discharges. She served as chair of Evans Plumbing board of directors and as secretary-treasurer of that corporation. Fur-

---

3. Even in the bankruptcy context, this proposition is not indisputable. *See, e.g., Durrett v. Washington Nat'l Ins. Co.*, 621 F.2d 201 (5th Cir.1980) ("transfer" occurs at foreclosure sale).

4. The policies underlying the National Labor Relations Act differ from the concerns that undergird the Bankruptcy Act to the extent that the interpretation of "transfer" under the Bankruptcy Act is not useful in determining successorship under the National Labor Relations Act.

5. In the case of a disinterested third-party who purchased the assets, the notice inquiry at the time the business changes hands would be more significant. The third-party successor could then consider the cost of the potential unfair labor practice liability when buying the assets at the sale or could opt not to form a substantially similar business with those assets. In the instant case, the notice rationale is less applicable. Elizabeth Mancin was on both sides of the transaction. Indemnity or reduction in purchase price, therefore, were not necessary.

ther, she was the mother of the company's president, John Mancin III, the officer who had committed the unfair labor practices. Both Elizabeth and John III were principals of Evans Plumbing as well as Evans Services. Notice is clearly present when both individuals were involved with the predecessor and successor corporations. *See NLRB v. Hot Bagels & Donuts*, 622 F.2d at 1115; *see also Golden State Bottling*, 414 U.S. at 172–74, 94 S.Ct. at 419–20 (Court upheld Board's imputation of knowledge of pending Board proceeding to successor corporation based on knowledge of officer of both successor and predecessor, despite officer's denial of knowledge).

Substantial evidence supports the Board's finding of successor liability in this case. Therefore, we GRANT enforcement of the Board's order except as it applies personally to the officers and agents of Evans Services.

Vance, Circuit Judge, concurred in part and dissented in part with opinion.