Rubye KNOX, Plaintiff,

v.

**BRUNDIDGE SHIRT CORPORATION, et al., Defendants.**

Civil Action No. CV–95–A–1607–N.

United States District Court,
M.D. Alabama,
Northern Division.

Oct. 16, 1996.

Benjamin E. Meredith, Dothan, AL, for plaintiff.

Jay D. St. Clair, John W. Smith, Birmingham, AL, for defendants.

### MEMORANDUM OPINION

### I. INTRODUCTION

ALBRITTON, District Judge.

This cause is before the court on defendants' motions for summary judgment, filed herein on June 17, 1996. Also filed herein on June 17, 1996, were Brundidge Shirt Corporation's memorandum in support of its motion for summary judgment and the defendants' evidentiary submission in support of their motions for summary judgment. The

evidentiary submission consists of excerpts from the plaintiff's deposition, two authorizations from a physician for the plaintiff to return to work, defendants' request for admissions, an affidavit of the senior vice-president of Brundidge Shirt Corporation, a description of Brundidge Shirt Corporation's Employee Minimum Efficiency Program, and copies of efficiency warnings which were issued to the plaintiff. The plaintiff filed a response in opposition to defendants' motions for summary judgment on July 10, 1996, and included affidavits of the plaintiff, one of the plaintiff's co-workers, and one of the plaintiff's supervisors. Defendants filed reply briefs on July 17, 1996.

Also before the court is Brundidge Shirt Corporation's motion to strike part of the plaintiff's affidavit, filed herein on July 17, 1996. Brundidge Shirt Corporation also filed a memorandum in support of its motion to strike on July 17, 1996.

## A. Facts

In deciding this Motion for Summary Judgment, the court has carefully examined all submissions by the parties and has construed them in a light most favorable to the plaintiff.

Rubye Knox is a black female around the age of fifty-five (55). She was hired by Brundidge Shirt Corporation ("Brundidge") as a sewing machine operator in January of 1966. After having worked for Brundidge nearly twenty-nine (29) years, Knox's employment was terminated on November 15, 1994.

Around the end of 1992 or early 1993, Knox began experiencing pain in her right arm and shoulder. Pursuant to the orders of the then plant manager, Paul Porter, the company nurse began treating Knox twice a day for this pain, giving her medication and hot and cold compresses. Because of the pain in her arm and shoulder, Knox was unable to efficiently perform her sewing work or keep up with the required volume of sewing work.

Sometime in 1993, the production manager, Mark Stansberry, ordered that Knox was to be relieved from her work as a sewing machine operator and to be reassigned as an in-process auditor, checking the quality of other operators' work. This job required Knox to walk among the sewing machine operators and check the quality of their work on tank tops and other items.

Even while performing the auditing work, Knox continued to have pain in her shoulder and arm. At some point, she began seeing Dr. William Hanson of the Dothan Bone and Joint Clinic, and Dr. Hanson gave Knox injections for the pain.

Early in 1994, Brundidge eliminated the in-process auditor jobs (i.e. those auditors who walk among the sewing machine operators and check the work while it is in progress). Other types of auditing jobs were not eliminated. Thus, on March 7, 1994, because Knox's auditing job had been eliminated, Knox was assigned back to the position of sewing machine operator and was required to sew together the shoulders of tank tops.

In order to ensure employee efficiency, Brundidge established the Employee Minimum Efficiency Program. Every two weeks, an operator was issued an efficiency report which rated her job performance for the two-week period. If, during any two-week period, an operator's efficiency fell below the established one-hundred percent (100%) efficiency standard, the operator's supervisor would hold a conference with the operator and give her an unsatisfactory efficiency warning. If an operator received six (6) unsatisfactory efficiency warnings during any fifty-four (54) week period, the operator would be terminated. The management of Brundidge reserved the right to adjust any unsatisfactory efficiency warnings in the event of special circumstances.

After returning to the position of sewing machine operator, Knox was issued her first unsatisfactory efficiency warning on September 1, 1994, for a bi-weekly efficiency rating of 86.4%. On September 19, 1994, Knox received her second unsatisfactory efficiency warning due to a bi-weekly rating of 96.2%. On October 3, 14, and 28, 1994, respectively, Knox received her third, fourth, and fifth warnings. Finally, on November 15, 1994, Knox received a bi-weekly efficiency rating of 86.5% and her sixth and final unsatisfacto-

ry efficiency warning. She was terminated that day.

Knox alleges that her inability to achieve a 100% efficiency rating was due to the physical ailment in her shoulder and hand. After Knox had received three warnings, on October 13, 1994, Dr. Hanson diagnosed Knox as suffering from left shoulder bursitis and right elbow tendonitis. Dr. Hanson requested that Brundidge furnish Knox with an elevated, swiveling chair—which Brundidge did supply to Knox—but otherwise found that Knox could continue her regular work without any restrictions. On November 13, 1994, after having received five warnings, Knox returned to see Dr. Hanson, and he again concluded that Knox could return to regular work without any restrictions. On both visits to Dr. Hanson, Knox was given a form to give to Brundidge which authorized her to return to regular work.

After her termination on November 15, 1994, Knox filed a Charge of Discrimination on December 27, 1994, with the Equal Employment Opportunity Commission ("EEOC"). On October 18, 1995, the EEOC issued a Notice of Right to Sue. On November 16, 1995, Knox filed a complaint against Brundidge Shirt Corporation and Russell Corporation ("Russell") in the Circuit Court of Pike County, Alabama. Knox alleges that Brundidge's actions in terminating her employment violated 42 U.S.C. § 1981, the Age Discrimination in Employment Act ("ADEA"), and the Americans with Disabilities Act ("ADA"). Furthermore, Knox also alleges that Brundidge's actions constitute retaliatory discharge in violation of Alabama Code § 25–5–11.1. Knox further alleges that Brundidge was acquired by Russell, and thus that Russell has assumed all of Brundidge's assets and liabilities.

Based on the court's federal question jurisdiction and supplemental jurisdiction, the defendants removed the case to federal court. On May 8, 1996, the defendants served a request for admissions on Knox. Knox failed to respond to the request. Thus, Knox has admitted all the matters asserted in the request for admissions. Fed.R.Civ.P. 36. On June 17, 1996, both Russell and Brundidge filed motions for summary judgment.

## B. Summary Judgment Standard

Under Fed.R.Civ.P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. at 2552. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–23, 106 S.Ct. at 2552–53.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. at 2553. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *Anderson v. Liberty Lobby,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

## II. CLAIMS AGAINST RUSSELL CORPORATION

In her complaint, the plaintiff alleges that since this action was commenced, Russell Corporation acquired Brundidge Shirt Corporation. She also alleges that Russell is now the owner of Brundidge's assets and is accountable for Brundidge's liabilities. Without citing authority in its motion for summary judgment, Russell argues that as a matter of law it is not a successor corporation to Brundidge, and is thus not liable for the employment discrimination claims against Brundidge.

A corporation, which is found to be the successor of another corporation, can be held liable for the predecessor's unfair labor practices, but only if the successor knew of the labor law violations at the time of the transfer of the business. *Evans Services, Inc. v. NLRB,* 810 F.2d 1089 (11th Cir.1987). A two-step inquiry is involved in determining a successor's liability for a predecessor's unfair labor practices. First, the court "must find that the new business retains common aspects of the prior business sufficient to allow the legal conclusion of 'successorship.'" *Evans Services,* 810 F.2d at 1092. Second, the court "must conclude that the successor knew of the unfair labor practices at the time it purchased the business." *Id.*

In determining the "successorship" status of Russell Corporation, the court must consider the following factors: the similarity of members of the boards of directors of the two corporations; whether both corporations used the same equipment; whether they operated at the same location; whether they operated in the same line of business and employed the same employees; whether advertisements directly linked the two corporations; and whether the new corporation began its business just after the old corporation closed its business. *Id.* at 1092–1093.

In June of 1995, Brundidge and Russell for the first time entered into negotiations for the sale of some of Brundidge's assets to Russell. These negotiations led to the sale of 29% of Brundidge's assets to Russell. Following the closing of the sale on September 11, 1995, Brundidge ceased all manufacturing and laid off all production employees. In its motion for summary judgment, Russell argues that the purchase of 29% of the assets of Brundidge is insufficient to label Russell as a successor corporation.

Plaintiff's response to defendants' motions for summary judgment failed to address Russell's argument. In her earlier response to Russell's motion to dismiss, Knox alleged that some of the management supervisory personnel of Brundidge are now employed in management supervisory positions at Russell. Besides this bare allegation, Knox has not produced any evidence to the court that is relevant to the factors of "successorship" listed above. Moreover, all of the cases found by the court which held that a corporation was a successor corporation involved the purchase of *all* of the predecessor's assets. In the present action, Russell merely purchased 29% of Brundidge's assets.

Because the plaintiff has failed to present any evidence to the court, the court finds that the plaintiff has not met her burden of showing that there is a genuine issue for trial as to whether Russell is a successor to Brundidge. For the foregoing reasons, Russell's motion for summary judgment is due to be and hereby is GRANTED.

## III. CLAIMS AGAINST BRUNDIDGE SHIRT CORPORATION

### A. Burdens of Production and Persuasion

*St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), is the most recent discussion by the Supreme Court of the complicated shifting of burdens and ultimate burdens placed on the employee and employer in employment discrimination cases. Initially the plaintiff must demonstrate his prima facie case which creates a presumption of discrimination. The prima facie case consists of the familiar *McDonnell Douglas* [1] elements: (1) plaintiff

---

**1.** *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973).

is a minority, (2) plaintiff was qualified for the position, (3) plaintiff was subject to an adverse employment decision, and (4) defendant replaced plaintiff with a non-minority. *St. Mary's,* 509 U.S. at 506, 113 S.Ct. at 2747.

After the plaintiff has demonstrated his prima facie case the burden of production is placed upon the defendant. The defendant must rebut the presumption by showing a legitimate, nondiscriminatory reason for the adverse employment decision. *Id.* Once the decision meets its burden of production, the presumption of discrimination created by the prima facie case is eliminated. *Id.* The burden of persuasion remains with the plaintiff at all times. *Id.* The plaintiff must then show (1) that the reason given by the defendant is pretextual, *i.e.,* false, and (2) that the real reason for the adverse employment decision is discrimination. *Id.* at 515, 113 S.Ct. at 2752. "However, to withstand summary judgment, a plaintiff need only demonstrate that a genuine question exists as to whether the reason for the decision was intentional discrimination." *Howard v. BP Oil Co.,* 32 F.3d 520, 525 (11th Cir.1994).

## B. Analysis

At the outset, it is important to note that plaintiff's response in opposition to defendants' motions for summary judgment consists largely of broad, conclusory allegations. Plaintiff cited no authority to the court, and her evidentiary submission of three affidavits lacked much substance supporting her claims.

### 1. 42 U.S.C. § 1981

In her complaint, Knox alleges that in 1994, "the defendant Brundidge began a systematic program of terminating long term black employees, *i.e.,* those black employees with long years of service that were rapidly acummulating [sic] benefits and compensation not vested in employees with short years of service, and specifically white employees." Complaint, Facts, ¶ 4. Plaintiff claims that Brundidge's conduct constitutes racial discrimination in violation of 42 U.S.C. § 1981.

■ The *McDonnell Douglas* framework applies to § 1981 actions. *Howard v.*

*BP Oil Co.,* 32 F.3d 520, 524 n. 2 (11th Cir.1994). Knox must present a prima facie showing of racial discrimination by showing that (1) she is a minority, (2) she was qualified for the job, (3) she was subjected to an adverse employment decision, and (4) she was replaced by a non-minority. First, Knox is a black woman, a minority. Second, she was obviously qualified for the job of sewing machine operator. She had worked for Brundidge for over twenty-eight (28) years, and most of that time was spent as a sewing machine operator. The fact that she may have performed poorly during the last few months of her employment in no way shows that she was unqualified for the job; it merely shows that she performed her job poorly. *See Leige v. Capitol Chevrolet, Inc.,* 895 F.Supp. 289, 292 (M.D.Ala.1995). Third, she was fired from her job as sewing machine operator. Fourth, she was replaced by a white woman. Knox has presented a prima facie case of racial discrimination.

■ Brundidge can easily rebut the presumption of racial discrimination established by Knox's proof of a prima facie case. If Brundidge states a legitimate reason for its actions in firing Knox, the burden shifts back to Knox to show that the articulated reason for her firing was pretextual and that the real reason was intentional racial discrimination. Brundidge produced evidence to the court showing that Knox failed to satisfy Brundidge's 100% efficiency requirement six times in the span of about three months. Pursuant to Brundidge's Employee Minimum Efficiency Program, Knox received a warning and had a conference with her supervisor each time she failed to meet the 100% efficiency requirement. Also, pursuant to the program, an employee who received six warnings in a fifty-four (54) week period would be terminated. Brundidge asserts that because Knox received six warnings in the three-month period, she was terminated. Having stated a legitimate reason for firing Knox, the burden is now on Knox to show that Brundidge's articulated reason was pretextual and that the real reason for her firing was intentional racial discrimination.

■ Knox can not meet her burden. Besides the mere showing of a prima facie case,

Knox has not presented any evidence to the court of racial discrimination. In fact, the EEOC sent a filled-in Charge of Discrimination form to Knox on which she could make corrections, sign, and send back to the EEOC for filing. The filled-in form had a box checked for race discrimination and included the following statements: "I believe that I was discharged in violation of Title VII of Civil Right [sic] Act of 1964. I believe that White employees with arm, hand and shoulder problems were assigned lighter work and retained on the workforce." Knox did not believe that she had been discharged because of her race. She erased the check in the race discrimination box and instead checked the age discrimination box. Moreover, she struck through the first sentence of the statement regarding Title VII, and she inserted "and some Black employees" into the second sentence.

The EEOC apparently also sent Knox a filled-in affidavit for her to correct and sign. On the second page of the affidavit, Knox deleted the charge of racial discrimination and instead inserted a charge based on age discrimination. This evidence shows that from the very outset, Knox did not believe that she was discharged on the basis of race. Moreover, Knox admitted that a white employee was discharged at about the same time that she was discharged. Knox has not put forward any evidence of racial discrimination.

For the foregoing reasons, summary judgment is due to be and hereby is GRANTED on the § 1981 count.

### 2. Age Discrimination in Employment Act (ADEA)

■ Knox alleges that her discharge was in violation of the Age Discrimination in Employment Act (ADEA). A plaintiff may use direct evidence, circumstantial evidence, or statistical evidence to establish a prima facie case of age discrimination. *Corbin v. Southland International Trucks*, 25 F.3d 1545, 1548 (11th Cir.1994). Knox has no direct or statistical evidence of age discrimination, so she is relying on circumstantial evidence. To establish a prima facie case of age discrimination based on circumstantial evidence, a plaintiff must show that (1) she was in the protected age group at the time of termination, (2) she was qualified for her position at the time of termination, and (3) evidence exists supporting a conclusion of intentional age discrimination by the employer. *Corbin*, 25 F.3d at 1549.

At the time of her termination, Knox was fifty-three (53) years old. Thus, her age was within the protected group of persons between the ages of forty (40) and seventy (70). *Jameson v. Arrow Co.*, 75 F.3d 1528 (11th Cir.1996). As stated above in the § 1981 analysis, Knox was qualified for her job. Thus, Knox has established the first and second elements of the prima facie case.

■ To satisfy the third element of the prima facie case, Knox must show that her replacement was outside the protected age group or if not outside the protected age group "that [her] replacement was younger than [she], provided that the discrepancy between the ages, along with any other relevant evidence, is sufficient that a fact finder could reasonably infer age discrimination." *Corbin*, 25 F.3d at 1549. The evidence shows that Knox was replaced by Joan Sawyer, a white female, who was transferred from another position at Brundidge and started working as a sewing machine operator the day after Knox was fired.

■ Having thoroughly examined all of the submissions of the parties in this case, the court finds no evidence as to the age of Joan Sawyer. Moreover, there is no evidence as to whether Sawyer is younger or older than Knox. Besides the language in the complaint which alleges that Knox's termination was in violation of the ADEA, there are not even any conclusory allegations that Knox was replaced by a younger person.

There is absolutely no evidence showing that Knox was replaced by a person outside of the protected age group. Nor is there any evidence that Knox was replaced by a person younger than she. Knox failed to present substantial evidence as to the third prong of a prima facie case of age discrimination under the ADEA. Thus, Brundidge's motion for summary judgment on the ADEA claim is due to be and hereby is GRANTED.

### 3. Americans With Disabilities Act (ADA)

 Knox also claims that Brundidge violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12213, when it terminated her employment. A prima facie case of discrimination under the ADA in an employment termination situation is established by showing that: (1) the employee is disabled; (2) the employee is qualified to perform, with or without accommodation, the essential functions of the job; and (3) the employer terminated the employee because of her disability. *Pritchard v. Southern Company Services*, 92 F.3d 1130, 1132 (11th Cir.1996).

An employee is considered to have a "disability" under the ADA if (1) she is substantially limited in one or more of her major life activities due to a physical or mental impairment, (2) she has a record of such impairment, or (3) she is regarded as having such impairment. 42 U.S.C. § 12102(2). The regulations of the Rehabilitation Act, which have been adopted by the EEOC in interpreting the ADA, define a physical or mental impairment as being a physiological disorder or condition which affects at least one body system or as being a mental or psychological disorder. 29 C.F.R. Pt. 1630, App. § 1630.2(h). When the impairment substantially limits a person in one or more of her major life activities, it rises to the level of a disability. 29 C.F.R. Pt. 1630, App. § 1630.2(j). Basic activities which the average person in the community can perform with little or no difficulty—such as lifting, reaching, standing, sitting, working, walking, performing manual tasks, and caring for oneself—are considered major life activities. 29 C.F.R. Pt. 1630, App. § 1630.2(i).

Knox undoubtedly suffered and still suffers from a physical impairment. While working for Brundidge, she was diagnosed as suffering from tendonitis in her elbow and bursitis in her shoulder. The result of these disorders was that Knox suffered severe pain in her arms and shoulders. The disorders caused her to be subjected to twice daily treatments from the company nurse and regular visits to the company doctor. Although, Knox has a physical impairment, the issue is whether that impairment rises to the level of a disability under the ADA.

Work is a major life activity. 29 C.F.R. Pt. 1630, App. § 1630.2(i). Knox is substantially limited in her ability to work if she is restricted as to the condition, manner, or duration under which she can work, as compared with an average person in the community. 29 C.F.R. § 1630.2(j). The factors considered in determining if an impairment is substantially limiting include "(1) the nature and severity of the impairment, (2) the duration or expected duration of the impairment, and (3) the permanent or long term impact of, or the expected permanent or long term impact of, or resulting from, the impairment." *Id.* If an individual is merely unable to perform a particular job for an employer, or if the individual is merely unable to perform a specialized skill, the individual is not substantially limited in the major life activity of working. *Id.* In other words, if the individual is only limited from performing "a narrow range of jobs," the individual is not substantially limited from working. *Id.*

In determining whether an individual is substantially limited in his or her working ability, the court can consider the "geographical area to which the individual has reasonable access." *Id.* The court can also consider the "job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment." *Id.* Finally, the court can weigh the "job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills, or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (broad range of jobs in all various classes)." *Id.*

 The court finds that Knox has not presented substantial evidence that she is significantly restricted as to the condition, manner, or duration under which she can work. Undoubtedly, Knox was substantially limited from performing her position as a sewing machine operator. However, this

limitation only limits Knox from one particular job. In fact, Knox's reason for claiming that she was discriminated against in her termination was that Brundidge failed to offer her any other position besides a sewing machine operator position. Knox testified that although she was unable to perform the job of sewing machine operator, she was able to and wanted to work in another position.

Knox has presented no evidence as to the geographical area to which she has reasonable access to jobs. Nor did she present any evidence as to the number of other jobs in this geographical area which require the same knowledge, skill, training, or ability as her job as a sewing machine operator. Moreover, she presented no evidence as to the number of jobs in the geographical area which do not require the same knowledge, skill, training, or ability as her job as a sewing machine operator. Basically, Knox relies on conclusory allegations that she is disabled.

Knox has presented no evidence that she is substantially limited in the major life activity of work. *See, e.g., Bolton v. Scrivner, Inc.,* 36 F.3d 939, 944 (10th Cir.1994) (summary judgment proper because plaintiff failed to present evidence concerning geographical area, class of jobs, or broad range of jobs, and only presented evidence concerning the nature and severity of impairment); *Howard v. Navistar Int'l Transp. Corp.,* 904 F.Supp. 922, 928–929 (E.D.Wis.1995) (summary judgment proper because plaintiff did not point to a class of jobs or broad range of jobs he could not do as a result of impairment, although plaintiff was unable to perform certain tasks).

Besides work, Knox has presented no evidence that she is substantially limited in any other major life activities. She has only shown the court that she is unable to perform one job, sewing machine operator. Furthermore, Knox presented no evidence which would satisfy the other two definitions of "disability" under the ADA. First, Knox presented no evidence that she is regarded as being substantially limited in a major life activity. Second, Knox presented no evidence that she had a record of a substantially limiting condition. Because Knox failed to present substantial evidence that she is "disabled" as defined by the ADA, she fails to make a prima facie case. Summary judgment is due to be and hereby is GRANTED on Knox's claim under the ADA.

Because the court finds that Knox did not present substantial evidence that she was "disabled," the court does not reach Brundidge's other arguments. Brundidge had argued that in addition to not being "disabled," Knox was not "otherwise qualified" for the position of sewing machine operator. Brundidge also argued that Knox failed to timely file her charge of disability discrimination with the EEOC. Knox did file a Charge of Discrimination with the EEOC within the 180-day period, but Knox amended the Charge after the 180-day period to include a charge of disability discrimination.

### 4. Ala.Code § 25–5–11.1

The plaintiff also claims that her termination from Brundidge violated Alabama Code section 25–5–11.1 which provides that "[n]o employee shall be terminated by an employer solely because the employee has instituted or maintained any action against the employer to recover worker's compensation benefits...." Ala.Code § 25–5–11.1. Knox asserts that Brundidge fired her because of its belief that firing her would avoid a worker's compensation claim.

 On a motion for summary judgment of a section 25–5–11.1 claim, if the defendant asserts and provides evidence of a legitimate reason for the employee's termination, the employee must then rebut the reason by showing evidence of a prima facie case of retaliatory discharge under section 25–5–11.1. *Culbreth v. Woodham Plumbing Co.,* 599 So.2d 1120, 1122 (Ala.1992). A plaintiff can make a prima facie case "by proving that [she] was 'terminated' because [she] sought to recover worker's compensation benefits...." *Twilley v. Daubert Coated Products, Inc.,* 536 So.2d 1364, 1369 (Ala. 1988). Until the defendant makes a showing of a legitimate reason for the plaintiff's termination on a motion for summary judgment, the plaintiff has no burden to show a prima facie case. *Culbreth,* 599 So.2d at 1122. "If

the defendant's showing of a legitimate reason is conclusive enough to establish that there is no genuine question as to [that] material fact and that the moving party is entitled to a judgment as a matter of law, the plaintiff would also have to produce evidence to refute that showing." *Id.* (internal citations and quotations omitted).

The Alabama Supreme Court decision in *Irons v. Service Merchandise Co.,* 611 So.2d 294 (Ala.1992), is almost exactly on point with the present action. In *Irons,* the plaintiff fell and injured herself at work. *Irons,* 611 So.2d at 295. She was unable to work for a period of time and recovered worker's compensation benefits. *Id.* Four months after returning to work, a supervisor warned Irons that she would be terminated unless her performance evaluations improved. *Id.* Irons resigned and alleged that she was constructively discharged in retaliation for her filing of a worker's compensation claim. *Id.* The employer put forth evidence that Irons was terminated because of her below average performance evaluations. *Id.* at 296. Irons responded by claiming that the employer's reason for firing her was merely pretextual and that the real reason was retaliation for filing a worker's compensation claim. *Id.*

The Alabama Supreme Court, after a careful review of the evidence found no evidence that Irons' firing was "anything other than good business and managerial practices." *Id.* Moreover, the court held that Irons only presented "merely conclusory statements, based upon speculation and conjecture, and as such, [were] insufficient, as a matter of law, to create a fact question so as to defeat [the employer's] properly supported motion for summary judgment." *Id.*

Brundidge asserts and has provided evidence that Knox was terminated under the company's Employee Minimum Efficiency Program. Knox received six warnings in about a three-month period for performing at less than 100% efficiency. Under the program, this was grounds for Knox's termination. Because Brundidge has presented a legitimate reason for Knox's termination, Knox must produce sufficient evidence that Brundidge's reason is pretextual and that the

real reason for her termination' was retaliation for filing a worker's compensation claim.

■■■ Brundidge admits that Knox was provided medical care by the worker's compensation carrier. Although it is not clear from the evidence, it appears and the court will assume that Knox was receiving worker's compensation benefits prior to being fired from Brundidge. There is no evidence as to whether Knox received worker's compensation benefits for several years prior to her termination or whether she began receiving the benefits just prior to the termination. Furthermore, the evidence shows that Knox's supervisors knew that she was receiving care for her shoulder and elbow. This evidence alone, however, is insufficient to support a claim that Knox was terminated because she sought worker's compensation benefits. The employer's knowledge that an employee is receiving care for an injury and is seeking compensation from the worker's compensation carrier is insufficient to support a claim of retaliatory discharge. There must be some evidence that the employee's worker's compensation claim motivated the employee's termination.

■■■ Knox's counsel filled his submissions to the court with broad and conclusory allegations. Plaintiff's counsel asserts that Brundidge fired Knox in an effort to avoid the worker's compensation claim. Counsel also alleges that in 1994 "Brundidge began a systematic program of terminating long term black employees, *i.e.,* those black employees with long years of service that were, rapidly acumulating [sic] benefits and compensation not vested in employees with short years of service. . . ." Complaint, Facts, ¶ 4. As noted above, however, merely conclusory allegations are insufficient to withstand a motion for summary judgment.

Because Knox failed to present substantial evidence supporting her section 25–5–11.1 claim, Brundidge's motion for summary judgment as to that claim is due to be and hereby is GRANTED.

## IV. BRUNDIDGE'S MOTION TO STRIKE

■■■ Brundidge moves the court to strike two portions of the plaintiff's affidavit. The

first portion concerns the reason why Knox was moved from her in-process auditor job back into a machine operator position. The second portion concerns what Knox's doctor might have been thinking when he noted that she could return to work without any restrictions.

"Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed.R.Civ.P. 56(e); *CMS Industries, Inc. v. L.P.S. Int'l, Ltd.,* 643 F.2d 289, 295 (5th Cir.1981).[2] In her affidavit, Knox testifies that during her talks with Dr. Hanson, she felt that he was under the impression that she was still working as an in-process auditor, rather than as a sewing machine operator. She makes this assertion in an attempt to explain why Dr. Hanson would have returned her to regular work without any restriction. However, she fails to assert that she has personal knowledge of what Dr. Hanson might have been thinking. Knox cannot testify as to matters of which she has no personal knowledge. She could have had Dr. Hanson file an affidavit with the court, but she failed to do so. Thus, the court will SUSTAIN Brundidge's objection as to this portion of plaintiff's affidavit. The court will not consider what Dr. Hanson may have been thinking.

■ It is settled that a plaintiff can not create a material issue of fact by filing a contradictory affidavit after previously testifying under oath as to the facts of a case. *See Van T. Junkins & Assoc. v. U.S. Industries, Inc.,* 736 F.2d 656 (11th Cir.1984); *but see Tippens v. Celotex Corp.,* 805 F.2d 949 (11th Cir.1986) (a subsequent affidavit can explain prior testimony without contradicting it). The deposition of Knox clearly shows that Knox understood that she was removed from her position as an in-process auditor because Brundidge eliminated this type of auditing position. Knox understood that other types of auditing positions were not eliminated by Brundidge.

Knox's affidavit states that "for reasons I do not know, I was taken off of this sedentary work and ordered back on a machine." While this statement appears contradictory to her deposition testimony, it can be read consistently. For example, while Knox may have understood that her in-process auditing position was being eliminated, she did not understand why Brundidge had decided to eliminate it. Because the two statements can be read consistently, Brundidge's objection to this portion of Knox's affidavit is OVERRULED.

For the foregoing reasons, Brundidge's motion to strike is due to be GRANTED in part and DENIED in part as stated above.

## V. CONCLUSION

For the reasons stated above, the court finds that defendant Brundidge Shirt Corporation's motion for summary judgment and defendant Russell Corporation's motion for summary judgment are due to be GRANTED. Brundidge Shirt Corporation's motion to strike part of the plaintiff's affidavit is due to be GRANTED in part and DENIED in part. A separate order and judgment will be entered in accordance with this memorandum opinion.

---

**2.** The Eleventh Circuit, in the *en banc* decision *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.