[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-16698
Non-Argument Calendar
_____

Agency No. 28-CA-023380

G4S SECURE SOLUTIONS INC.,

Petitioner-Cross Respondent,

versus

NLRB,

Respondent-Cross Petitioner.

_____

Petitions for Review of a Decision of the
National Labor Relations Board
_____

(September 1, 2017)

Before ED CARNES, Chief Judge, JULIE CARNES, and JILL PRYOR, Circuit
Judges.

PER CURIAM:

The National Labor Relations Board found that G4S Secure Solutions, Inc., committed several violations of the National Labor Relations Act, 29 U.S.C. §§ 151–169.  G4S petitions for review, contending that one of the Board's determinations is erroneous and that the remedy the Board ordered is overbroad. The Board cross-petitions for enforcement of its order.

## I.

G4S is a security contractor for clients across the country.  Under one of its contracts, it provides security along a portion of Valley Metro Rail, a light rail system in the Phoenix, Arizona, metropolitan area.  There, its security officers patrol the train platforms, verify that riders have paid their fare, and monitor the CCTV system, among other things.

G4S distributes a "Security Officer Handbook" to its officers nationwide. The "Professional Image" section of the handbook states, in relevant part:

> You must be neat and clean while on duty.  You must wear only the complete uniform as prescribed by your supervisor . . . .
>
> Due to the public nature of our business and the business necessity that uniformed personnel represent figures of authority, we have established the following rules for personal appearance.
>
> No insignias, emblems, buttons, or items other than those issued by the company may be worn on the uniform without expressed permission.

We will call the rule contained in the third paragraph the "no-insignia rule."

2

The International Union, Security, Police and Fire Professionals of America filed a charge against G4S alleging that it committed numerous unfair labor practices as part of its management of the Metro contract. The amended charge's allegations comprised two categories. First, it contained allegations connected to G4S' nationwide policies; for example, it alleged that G4S was "maintaining overly-broad . . . work rules in its [nationwide] handbook." Second, it contained allegations connected to G4S' conduct in connection with the Metro contract; for example, it alleged that G4S had fired an employee at the Metro facility "because he engaged in [u]nion and other protected concerted activities."

The Board concluded that several of G4S' policies and actions, including the no-insignia rule, violated the Act. It explained that the no-insignia rule was overbroad because it could be reasonably construed as prohibiting activity protected by § 7 of the Act.

The Board ordered G4S to rescind its no-insignia rule. It also ordered that G4S give employees nationwide either (1) a handbook insert that advised that the no-insignia rule was rescinded or provided the language of a new, lawful version of the no-insignia rule, or (2) a revised handbook that did not include the no-insignia rule or provided the language of a new, lawful version of the no-insignia rule.

3

In addition, the Board ordered G4S to post two notices at its facilities. First, it ordered that the notice attached to its decision as "Appendix A" be posted at G4S facilities in the Phoenix area. Appendix A stated that the Board had found that G4S committed labor law violations and detailed all the rights G4S violated in connection with its Metro contract. Second, the Board ordered that the notice attached to the decision as "Appendix B" be posted at G4S facilities nationwide. Appendix B also stated that the Board had found labor law violations, but described only the rights violated in connection with G4S' handbook and other nationwide policies.

## II.

"On review, we uphold the Board's factual findings if they are supported by substantial evidence on the record considered as a whole." Evans Servs., Inc. v. NLRB, 810 F.2d 1089, 1092 (11th Cir. 1987) (quotation marks omitted). And "we defer to the Board's conclusions of law if they are based on a reasonable construction of the Act." Id. We likewise "defer to the Board's application of its rules [to the facts] if the application is reasonable." NLRB v. Dynatron/Bondo Corp., 176 F.3d 1310, 1313 (11th Cir. 1999).[1]

## A.

---

[1] G4S has challenged the Board's order only with respect to its determination of the no-insignia rule issue and the scope of its remedy. It "does not contest the Board's other findings of unfair labor practices. Consequently, those findings are entitled to summary enforcement." NLRB v. Escambia River Elec. Coop., Inc., 733 F.2d 830, 831 (11th Cir. 1984).

Section 8(a)(1) of the Act, 29 U.S.C. § 158(a)(1), "makes it an unfair labor practice for an employer to interfere with, restrain or coerce employees in the exercise of guaranteed rights."  NLRB v. Malta Constr. Co., 806 F.2d 1009, 1011 (11th Cir. 1986).  "Based on this section, courts have repeatedly held that absent special circumstances to maintain production or discipline or insure safety, interfering with an employee's right to wear union insignia constitutes an unfair labor practice."  Id.  "An ambiguous or overbroad rule that employees would reasonably understand to prohibit protected activity," such as wearing union insignia, "is presumptively unlawful" under the Act.  See Mercedes-Benz U.S. Int'l, Inc. v. Int'l Union, UAW, 838 F.3d 1128, 1135 (11th Cir. 2016) (emphasis omitted).[2]

G4S contends that the Board erred in concluding that its no insignia on uniforms rule was overbroad.  One of the Board's bases for that conclusion was that a G4S employee could reasonably understand the rule as prohibiting a protected activity — the display of union insignia when off duty (if the employee

_____

[2] The Board's decision was based on its "reasonably construe" test, as set out in Martin Luther Memorial Home, Inc. v. Foreman, 343 N.L.R.B. 646 (2004).  G4S urges us overrule the Board and hold that the test is an unreasonable construction of the Act.  But a prior panel of this Court has already approved the Martin Luther Memorial Home test.  See Mercedes-Benz, 838 F.3d at 1138–39 ("In the instant case, the ALJ correctly identified the Martin Luther Memorial Home framework . . . ."); see also id. at 1135 (setting out the synonymous rule that "[a]n ambiguous or overbroad rule that employees would reasonably understand to prohibit protected activity . . . is presumptively unlawful") (emphasis omitted).  "[W]e are bound to follow [that approval] regardless of our view of [its] correctness."  United States v. Doyle, 857 F.3d 1115, 1119 (11th Cir. 2017).

is wearing his uniform while off duty).  G4S argues that basis was unfounded because the handbook unambiguously limits the application of the no-insignia rule to the period of time when an employee is on duty.  We disagree.

It is true that, two paragraphs before the no-insignia rule, the handbook states that employees "must be neat and clean while on duty."  (Emphasis added).  That temporal limitation could be read to extend to the no-insignia rule two paragraphs below.  But it would be just as reasonable to read the lack of a limitation in the no-insignia rule itself as showing that, unlike the "neat and clean" rule, the no-insignia rule applies on and off duty so long as the uniform is being worn.

G4S points out that another handbook provision states that an officer's uniform may not be worn while conducting "outside business."  Because the no-insignia rule applies only when an employee is wearing his uniform, G4S asserts that the limitation on wearing uniforms during "outside business" effectively limits the applicability of the no-insignia rule.  But the term "outside business" is not defined, and it is not clear whether an employee could, for example, permissibly wear his uniform while attending a union rally during off-duty hours.  As a result, the "outside business" provision does not resolve the temporal ambiguity in the no-insignia rule.  The Board's conclusion that the rule was overbroad because it could be reasonably construed by employees as applying to off-duty protected activity,

6

see id., was a reasonable application of the Board's rules to the facts of this case, and we must defer to it, see Dynatron/Bondo, 176 F.3d at 1313.[3]

### B.

G4S also contends that, even if the Board's decision was correct on the merits, the remedy it ordered was too broad.  "We must . . . give significant deference to the Board's chosen remedy."  NLRB v. Goya Foods of Fla., 525 F.3d 1117, 1126 (11th Cir. 2008).  "In fashioning its remedies under the broad provisions of § 10(c) of the Act (29 U.S.C. § 160(c)), the Board draws on a fund of knowledge and expertise all its own, and its choice of remedy must therefore be given special respect by reviewing courts."  Id. (quoting NLRB v. Gissel Packing Co., 395 U.S. 575, 613 n.32, 89 S. Ct. 1918, 1940 n.32 (1969)).

G4S argues that the Board exceeded the scope of the litigation and went beyond its own factual findings when it ordered nationwide modifications to G4S' handbook.  But, as we have already discussed, an overbreadth allegation can be proved by showing that the rule as written could be "reasonably construe[d]" by an employee, wherever he works, as prohibiting § 7 activity.  See Martin Luther Mem'l Home, Inc. v. Foreman, 343 N.L.R.B. 646, 647 (2004).  Because, in overbreadth cases, it is the company-wide policy itself that violates the Act, "only a company-wide remedy extending as far as the company-wide violation can

---

[3] Because we enforce the Board's decision on this basis, we need not reach the Board's other basis for concluding that the no-insignia rule was overbroad.

remedy the damage." Guardsmark, LLC v. NLRB, 475 F.3d 369, 380–81 (D.C. Cir. 2007).

The amended charge in this case alleged that G4S maintained "overly-broad . . . work rules in its employee handbook." From the early stages of this litigation, then, G4S' nationwide policies were at issue. In light of that, once the Board determined that the no-insignia rule was overbroad, a nationwide remedy was justified. See id. The Board's remedy as to the handbook violation was within its authority.

Finally, G4S argues that the Board exceeded its authority by ordering it to post Appendix A in Phoenix-area facilities and Appendix B in facilities nationwide. We have recognized that the Board may permissibly order a company to post violation notices "at other facilities within the particular division of the [c]ompany located in the same geographical area" as the unfair labor practices at issue. Tex. Gulf Sulphur Co. v. NLRB, 463 F.2d 778, 779 (5th Cir. 1972).[4] Because Appendix A detailed the numerous unfair labor practices that occurred in connection with the Phoenix-area Metro contract, it was appropriate for the Board to order G4S to post that notice throughout the Phoenix area. See id.

---

[4] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

Appendix B referred only to unfair labor practices related to the employee handbook and other nationwide policies.  As we have already explained, violations related to nationwide policies are nationwide violations.  See Guardsmark, 475 F.3d at 380–81.  As a result, the Board acted within its authority when it ordered Appendix B to be posted at facilities nationwide.

**ENFORCED.**