Richard M. HORTH, Plaintiff,

v.

GENERAL DYNAMICS LAND
SYSTEMS, INC.,
Defendant.

No. 3:CV–95–118.

United States District Court,
M.D. Pennsylvania.

Heard November 7, 1996.

March 26, 1997.

Todd J. O'Malley, Scranton, PA, for Plaintiff.

James C. Oschal, Wilkes–Barre, PA, for Defendant.

## MEMORANDUM

VANASKIE, District Judge.

The plaintiff, Richard M. Horth (Horth), brought this action under the Americans with Disabilities Act, 42 U.S.C. § 12201 *et seq.*, claiming that the defendant, General Dynamics Land Systems, Inc. (General Dynamics), discriminated against him in refusing his request for early retirement benefits. Both parties have moved for summary judgment. (Dkt. Entries 21 & 23.) Because Horth has failed to present evidence sufficient to establish his prima facie case or to raise an inference that he was denied early retirement benefit as a result of his alleged disability, General Dynamics' summary judgment motion will be granted.

## I. BACKGROUND

Horth was employed by General Dynamics from January 1978 through August 1991. (Plf's Stat. of Facts (Dkt. Entry 24) ¶ 3; Def's Stat. of Facts (Dkt. Entry 22) ¶ 3.) In January 1990, Horth injured his shoulder and lower back when he fell from a cafeteria chair at work. (Def's Stat. of Facts (Dkt. Entry 22) ¶ 16; Plf's Answer (Dkt. Entry 27) ¶ 16.) As a result of this injury, Horth was absent from work for a short time and received workers' compensation. (Def's Stat. of Facts (Dkt. Entry 22) ¶ 16; Plf's Answer (Dkt. Entry 27) ¶ 16.) On or about April 23, 1990, Horth returned to work on a "light duty" status and his workers' compensation benefits were suspended. (Plf's Answer (Dkt. Entry 27) ¶ 16.) On July 9, 1990, while working at General Dynamics, Horth injured his elbow. (Def's Stat. of Facts (Dkt. Entry 22) ¶ 17; Plf's Answer (Dkt. Entry 27) ¶ 17.) On August 13, 1991, while working on "light duty" status, Horth injured both of his knees. (Def's Stat. of Facts (Dkt. Entry 22) ¶ 18; Plf's Answer (Dkt. Entry 27) ¶ 18.) [1]

On August 28, 1991, General Dynamics implemented a seniority-based reduction in workforce which caused Horth to be laid off. (Plf's Stat. of Facts (Dkt. Entry 24) ¶ 4–5.)

---

1. Horth apparently did not miss any work as a result of the July 19 and August 13 incident.

Horth admits that he was forced to leave his position as a result of general downsizing, and not because of his medical problems. (Def's Stat. of Facts (Dkt. Entry 22) ¶ 29; Plf's Answer (Dkt. Entry 27) ¶ 29.)

On or about September 26, 1991, Horth petitioned the Pennsylvania Bureau of Workers Compensation to reinstate workers' compensation benefits payable as a consequence of his January 1990 work-related injury. On or about September 30, 1991, Horth petitioned the Bureau of Workers Compensation for an award of benefits based upon the alleged work-related injuries sustained in July and August of 1991. (Def's Stat. of Facts (Dkt. Entry 22) ¶ 19; Plf's Answer (Dkt. Entry 27) ¶ 19.)

In a decision filed on December 11, 1991, the Workers' Compensation referee assigned to this matter granted Horth's petition for reinstatement of benefits payable as a consequence of his January, 1990 work-related accident. As a result, Horth was awarded workers' compensation benefits of $384.28 per week, retroactive to August 31, 1991.[2] (Plf's Stat. of Facts (Dkt. Entry 24) ¶ 7.) In affirming the award, the Workmen's Compensation Appeal Board found that Horth's case was governed by precedent which held that where, as here, benefits were suspended while an injured claimant occupies a light duty job and that job is subsequently eliminated, workers' compensation benefits are to be reinstated until a petition to either terminate or modify the award is granted. *See Scobbie v. Workmen's Compensation Appeal Bd.*, 118 Pa.Commw. 424, 545 A.2d 465 (1988), *app. denied*, 522 Pa. 607, 562 A.2d 829 (1989); *Zimcosky v. Workmen's Compensation Appeal Bd.*, 118 Pa.Commw. 209, 544 A.2d 1106 (1988).

Horth's petition for workers' compensation based on his alleged July and August, 1991 work-related injuries proceeded to an evidentiary hearing. Based on the testimony of various physicians, the workers' compensation judge found that Horth was "capable of performing appropriate sedentary or light

duty work, but was placed on indefinite lay off as of September 1, 1991 while continuing to suffer from the work injury...." (Plf's S.J. Mot. (Dkt. Entry 23) Exhibit C, ¶ 14(d).) Horth was awarded a weekly compensation benefit of $436 for "temporary total disability," retroactive to September 1, 1991.[3] Thus, Horth has been paid workers' compensation benefits of $436 since he was laid off by General Dynamics. (Def's Stat. of Facts (Dkt. Entry 22) ¶ 32; Plf's Answer (Dkt. Entry 27) ¶ 32.)

In early March of 1993, General Dynamics and Horth's Union, the United Automobile, Aerospace & Agricultural Implement Workers of America (UAW), announced the establishment of a Special Early Retirement Plan (Plan). (Plf's Dep. (Dkt. Entry 20) Exhibit 5.) The Plan, which was formally executed on March 30, 1993, made available special pension benefits to "[a]ll employees currently on indefinite layoff and those indefinitely laid off through the expiration of the current Agreements (June 18, 1994) who were at least age 50 with 10 years credited service at time of layoff." (*Id.*, Exhibit 5.) The Plan further provided that "[a] laid off worker (indefinite layoff or closed plant) will become eligible for and may apply for a Special Early Retirement after having been on an indefinite layoff for sixty (60) days." (*Id.*) The purpose of the Plan was to provide assistance to those employees affected by General Dynamics' downsizing. (Def's Stat. of Facts (Dkt. Entry 22) ¶ 37.) The Plan was not intended to provide additional benefits to employees who were already receiving a supplemental income from another source. (*Id.* ¶ 38)

Horth submitted an application for early retirement benefits under the Plan on March 12, 1993. (Plf's Dep. (Dkt. Entry 20) Exhibit 7.) At the time that Horth applied for early retirement, he had over ten years of service and was over 50 years old. (Plf's Stat. of Facts (Dkt. Entry 24) ¶ 11–12.) Further, Horth had been out of work for more than sixty days. (*Id.* ¶ 13.) Despite his apparent

---

2. The weekly benefit was based upon Horth's average weekly wage in January 1990 of $576.43.

3. This amount was based on his weekly average wage of $757.06 as of August 13,1991. A credit was given for benefits paid pursuant to the January 1990 reinstated award.

qualifications, Horth was denied early retirement benefits.

General Dynamics informed Horth that he was not entitled to early retirement benefits because he was not on "layoff" status; instead, he was on "workers' compensation" status. (Def's Stat. of Facts (Dkt. Entry 22) ¶ 43; Plf's Answer (Dkt. Entry 27) ¶ 43.) In a letter dated November 12, 1993, George Guman, the UAW benefits representative, told Horth that according to the UAW's understanding of the Plan, Horth did not qualify for early retirement benefits because he was collecting workers' compensation benefits. (Def's Stat. of Facts (Dkt. Entry 22) ¶ 44; Plf's Answer (Dkt. Entry 27) ¶ 44.) Consistent with this understanding, the UAW decided not to file a grievance on Horth's behalf concerning the denial of early retirement benefits. (Def's Stat. of Facts (Dkt. Entry 22) ¶ 53; Plf's Answer (Dkt. Entry 27) ¶ 53.)

Following exhaustion of administrative remedies, Horth filed the instant action claiming that General Dynamics had violated the ADA by refusing to grant him early retirement benefits under the Plan. The ADA claim is the only cause of action asserted by Horth.[4] Both Horth and General Dynamics have moved for summary judgment. Briefing was completed on May 31, 1996, and this matter is ripe for disposition.

## II. DISCUSSION

### A. Standard of Review

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is "material" if proof of its existence or non-existence might affect the outcome of the suit under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "Facts that could alter the outcome are material facts." *Charlton v. Paramus Bd. of Educ.*, 25 F.3d 194, 197 (3d Cir.), *cert. denied*, 513 U.S. 1022, 115 S.Ct. 590, 130 L.Ed.2d 503 (1994).

"Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. There is no issue for trial unless sufficient evidence favors the nonmoving party so that a jury could return a verdict for that party. *Id.* at 249, 106 S.Ct. at 2510–11. Rule 56 requires the entry of summary judgment, after adequate time for discovery, where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

Initially, the moving party must show the absence of a genuine issue concerning any material fact. *Celotex*, 477 U.S. at 329, 106 S.Ct. at 2555–56. All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. *White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir.1988); *Continental Ins. Co. v. Bodie*, 682 F.2d 436 (3d Cir.1982). Once the moving party has satisfied its burden, the nonmoving party "must present affirmative evidence to defeat a properly supported motion for summary judgment." *Anderson*, 477 U.S. at 256–57, 106 S.Ct. at 2514. The affirmative evidence must consist of verified or documented materials. Mere conclusory allegations or denials taken from the pleadings are insufficient to withstand a motion for summary judgment once the moving party has presented evidentiary materials. *Schoch*

---

4. Horth previously filed another action in this Court under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1101 *et seq. Horth v. General Dynamics Land Systems, Inc.*, No. 3:CV–93–1394 (M.D.Pa.). In that action, Horth claimed that his receipt of workers' compensation did not disqualify him from receiving benefits under General Dynamics' "Supplemental Unemployment Benefits Plan." In a Memorandum and Order filed on June 22, 1995, I rejected Horth's ERISA claim. Horth has not sought relief under ERISA in this case.

*v. First Fidelity Bancorporation,* 912 F.2d 654, 657 (3d Cir.1990).

## B. The Elements Of A Claim Under The Americans With Disabilities Act (ADA)

■ A plaintiff asserting an ADA claim bears the initial burden of establishing a prima facie case of unlawful discrimination.[5] *Olson v. General Elec. Astrospace,* 101 F.3d 947, 951 (3d Cir.1996); *Newman v. GHS Osteopathic, Inc.,* 60 F.3d 153, 157 (3d Cir. 1995); *see also Keller v. Orix Credit Alliance, Inc.,* 105 F.3d 1508, 1518–19 (3d Cir. 1997) (outlining the shifting burdens of production framework which is applicable in employment discrimination cases). A plaintiff presents a prima facie case of discrimination under the ADA by demonstrating: (1) he is a member of a protected class in that he has a "disability"; (2) he is qualified for the position in that he can perform the work with reasonable accommodations; and (3) he has suffered an adverse employment decision as a result of discrimination. *Olson,* 101 F.3d at 951. Once a plaintiff has established his prima facie case, the burden shifts to the employer to produce some legitimate non-discriminatory reasons for the employment decision. *Keller,* 105 F.3d at 1518–19; *Olson,* 101 F.3d at 951. Once the employer has met this burden of production, it is incumbent upon the plaintiff to show that the asserted reason is a pretext for discrimination. *Olson,* 101 F.3d at 952; *Fuentes v. Perskie,* 32 F.3d 759, 765 (3d Cir.1994). The plaintiff can defeat a summary judgment motion by casting doubt on the credibility of the employer's articulated reasons or by raising a genuine issue as to whether the adverse employment decision was motivated by a discriminatory intent. *Keller,* 105 F.3d at 1522; *Olson,* 101 F.3d at 951.

■ For the purposes of this decision, I am assuming that Horth has demonstrated that he is qualified,[6] and that he has suffered an adverse employment decision as a result of discrimination.[7] Therefore, the dispositive issue is whether Horth has a "disability" under the ADA. At the summary judgment stage, where a defendant has challenged the existence of plaintiffs prima facie case, it is incumbent upon the plaintiff to come forward with some evidence to support his or her claims. In particular, where, as here, a defendant challenges the existence of a disability under the ADA, a plaintiff seeking relief under the ADA has the burden of demonstrating that there is a triable issue as to whether he or she has a "disability" as that term is defined under the ADA.

## C. The "Disability" Issue

■ Under the statute, a person has a "disability" if "he (1) has 'a physical or mental impairment that substantially limits one or more of the major life activities of such individual'; (2) has 'a record of such an impairment'; or (3) is 'regarded as having such an impairment.'" *Kelly v. Drexel Univ.,* 94 F.3d 102, 105 (3d Cir.1996) (quoting 42 U.S.C. § 12102(2); 29 C.F.R. § 1630.2(g)). Under the regulations, a person "is substantially limited in a major life activity if he is '[u]nable to perform a major life activity that

5. The relevant section of the ADA provides:

> No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112. Horth claims that General Dynamic violated the ADA when it denied him a retirement benefit. Retirement benefits are covered by the provisions of the ADA. *See, e.g., Esfahani v. Medical College of Pa.,* 919 F.Supp. 832, 836 (E.D.Pa.1996).

6. Although General Dynamics attempted to argue that Horth is not qualified (Def's Stat. of Facts (Dkt. Entry 22) ¶¶ 26 & 34), this argument must fail. General Dynamic did not terminate Horth because he could not perform his "light work" duties; instead, the parties agree that Horth's release was the result of a seniority-based lay-off. Considering that Horth was able to provide services to General Dynamics with reasonable accommodations, Horth is a qualified individual under the ADA.

7. A plaintiff suffers an adverse employment decision based upon a disability if the employer denied the plaintiff retirement benefits as a result of the plaintiffs disability. *See Esfahani,* 919 F.Supp. at 836. Because Horth alleges that General Dynamics declared him ineligible for early retirement benefits, Horth has demonstrated an adverse employment action.

the average person in the general population can perform' or is 'significantly restricted as to the condition, manner or duration under which [he] can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform the same major life activity.'" *Id.* (quoting 29 C.F.R. § 1630.2(j)). As the Third Circuit noted, "'to rise to the level of a disability, an impairment must significantly restrict an individual's major life activities. Impairments that result in only mild limitations are not disabilities.'" *Id.* at 107 (quoting *EEOC Compliance Manual* § 902, at 902–19).

■ In terms of the major life activity of working, a plaintiff must demonstrate that he is unable to perform "either a class of jobs or a broad range of jobs in various classes as compared to the average person." 29 C.F.R. § 1630.2(j)(3)(i). In particular, a court should consider the plaintiffs ability, talents, and skills as marketable within the plaintiffs geographic community to determine whether he is unable to perform a class of jobs. *Id.* § 1630.2(j)(3)(ii)(A)–(C). The inability to perform a single job does not warrant a finding that the plaintiff has a disability; instead, the plaintiff must demonstrate that an entire class or range of jobs has been foreclosed. *Williams v. Channel Master Satellite Sys. Inc.*, 101 F.3d 346, 349 (4th Cir.1996); *MacDonald v. Delta Air Lines. Inc.*, 94 F.3d 1437, 1445 (10th Cir.1996); *Robinson v. Neodata Servs., Inc.*, 94 F.3d 499, 501 (8th Cir.1996); *Ray v. Glidden Co.*, 85 F.3d 227, 229 (5th Cir.1996); *Wooten v. Farmland Foods*, 58 F.3d 382, 386 (8th Cir. 1995); *Knox v. Brundidge Shirt Corp.*, 942 F.Supp. 522, 531 (M.D.Ala.1996); *Hutchinson v. United Parcel Serv., Inc.*, 883 F.Supp. 379, 396 (N.D.Iowa 1995); *McKay v. Toyota Motor Mfg., U.S.A., Inc.*, 878 F.Supp. 1012, 1015 (E.D.Ky.1995).

Since sustaining his work-related injuries, Horth is unable to sit or stand for more than two hours at a time without having difficulty. (Def's Stat. of Facts (Dkt. Entry 22) ¶ 21; Plf's Answer (Dkt. Entry 27) ¶ 21). Horth has difficulty walking and walks with a limp. (Def's Stat. of Facts (Dkt. Entry 22) ¶ 22; Plf's Answer (Dkt. Entry 27) ¶ 22). Horth also has difficulty continually lifting objects over twenty pounds for a sustained period. (Def's Stat. of Facts (Dkt. Entry 22) ¶¶ 22, 24; Plf's Answer (Dkt. Entry 27) ¶¶ 22, 24.) Horth's ability to perform certain work can be affected by certain atmospheric pressure systems. (Def's Stat. of Facts (Dkt. Entry 22) ¶ 23; Plf's Answer (Dkt. Entry 27) ¶ 23.) At Horth's workers' compensation hearing, it was determined that he suffered from a "temporary total disability" as a result of various work injuries, including a right shoulder sprain, a rotator cuff tear, a lateral epicondylitis of the right elbow, and the temporary aggravation of a preexisting degenerative condition in both knees. (Plf' S.J.Mot. (Dkt. Entry 23) Exhibit C.) This is the *only* evidence that Horth has produced to support his claim that he is entitled to protection under the ADA. This evidence is insufficient to support a finding that any of Horth's major life activities are significantly limited.

■ In terms of the major life activities of walking, lifting, standing, or sitting, Horth has not produced evidence to demonstrate that his limitations are any more than "comparatively moderate restrictions." *Kelly*, 94 F.3d at 106. In Kelly, the plaintiff had a degenerative joint disease in his right hip which limited his ability to walk. *Id.* at 105. The plaintiff asserted that he had great difficulty walking, had to climb stairs slowly, and could not walk more than a mile without pain. *Id.* Although the Third Circuit noted that the plaintiff had an impairment, it held that there was not enough evidence to support a finding that any of the plaintiffs major life activities were significantly limited. *Id.* at 107. Similarly, Horth has failed to provide *any* evidence to support his claim that his impairments are so great, when compared to the average person, as to significantly limit one of his major life activities.

■ As to the major life activity of working, Horth has failed to provide any evidence that, because of his impairment, he cannot find work in a class or broad range of jobs. Significantly, Workers' Compensation Judge Armand E. Olivetti, Jr., determined that Horth was capable of performing "light duty" work. (*Id.*) Further, Horth admits that he is able to perform "light duty" work. (Plf's

Answer (Dkt. Entry 27) ¶ 25–26.) There is no dispute that Horth was not fired because of his impairment; instead, he lost his job as a result of downsizing and his lack of seniority.

In this regard, Horth's alleged inability to lift twenty pounds continually throughout an eight hour shift is not sufficient to demonstrate that the major life activity of working is substantially limited. *See Williams*, 101 F.3d at 349 (a 25 pound lifting restriction was, as a matter of law, insufficient to establish a significant limitation of the major life activity of working); *Ray*, 85 F.3d at 229 (inability to continuously lift 10 to 56 pound containers insufficient, as a matter of law, to establish a significant limitation of the major life activity of working); *Aucutt v. Six Flags Over Mid–Am., Inc.*, 85 F.3d 1311, 1319 (8th Cir.1996) (plaintiff not entitled to a trial because a 25 pound lifting restriction did not substantially limit his overall employment opportunities); *Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 726–27 (5th Cir.1995) (inability to do heavy lifting and repetitive motions insufficient, as a matter of law, to support a finding of disability); *Bolton v. Scrivner, Inc.*, 36 F.3d 939, 943–44 (10th Cir.1994) (inability to lift heavy weights or stand for long periods of time insufficient, as a matter of law, to establish a disability), *cert. denied*, 513 U.S. 1152, 115 S.Ct. 1104, 130 L.Ed.2d 1071 (1995); *Kriskovic v. Wal–Mart Stores, Inc.*, 948 F.Supp. 1355, 1363–65 (E.D.Wis.1996) (inability to lift, push or pull objects heavier than 25 pounds did not demonstrate that the plaintiff was foreclosed from a class or broad range of jobs); *Hutchinson*, 883 F.Supp. at 396 (lifting restriction of 70 pounds would not disqualify the plaintiff from a broad class of jobs); *Fink v. Kitzman*, 881 F.Supp. 1347, 1377 (N.D.Iowa 1995) (lifting restriction caused by carpel tunnel syndrome insufficient, as a matter of law, to demonstrate a significant limitation on the major life activity of working); *McKay*, 878 F.Supp. at 1014–15 (plaintiff not entitled to a trial even though she could no longer work as an automobile assembler because of lifting restrictions).[8] Although Horth's inability to lift heavy objects may eliminate certain specific jobs, such a restriction does not foreclose Horth's participation in an entire class of jobs or a broad range of jobs. In fact, Horth admits that he was adequately performing "light duty" work when he was laid off.

Further, Horth's alleged injuries to his knees and right elbow, even when considered in connection with his shoulder injuries, do not demonstrate that he is significantly limited in the major life activity of working. *See Kelly*, 94 F.3d at 106 (minor difficulty and pain when walking, as compared to the average person, only "comparatively moderate restrictions" which did not rise to the level of a disability); *Robinson*, 94 F.3d at 501 (6% impairment in plaintiffs hands failed to demonstrate that plaintiff was foreclosed from an entire class or broad range of jobs); *Rogers v. International Marine Terminals, Inc.*, 87 F.3d 755, 758–59 (5th Cir.1996) (13% permanent disability which limited plaintiffs ability to stand, walk, climb and work did not constitute a disability because there had been no showing that plaintiff was unable to perform other jobs); *Kriskovic*, 948 F.Supp. at 1363–64 (an injury to plaintiffs ankle which limited his ability to walk, stand, lift, push, pull and climb not a substantial limitation on a major life activity).

When presented with facts similar to those involved in this case, the court in *Knox v. Brundidge Shirt Corp.*, 942 F.Supp. 522 (M.D.Ala.1996), held that the plaintiff had failed to establish a qualifying "disability." The plaintiff in *Knox* had been a sewing machine operator for 29 years when she began to experience pain in her right shoulder and arm. *Id.* at 530. After a medical examination, it was discovered that she had tendinitis in her elbow and bursitis in her shoulder. *Id.* These conditions substantially limited her ability to be a sewing machine operator, her profession for nearly three decades. *Id.* The court, however, noted that the plaintiff was *only* limited in that one specific job. *Id.* at 531. The plaintiff admitted that she was capable of working in other capacities. *Id.* The plaintiff failed to estab-

---

8. In each of the foregoing cases, the court decided that the plaintiff did not have a "disability" under the ADA in the context of a summary judgment motion.

lish that she was restricted in terms of the jobs available in her geographic region which required the same skill, knowledge, training and ability. *Id.* Because the plaintiff failed to demonstrate that she was foreclosed from an entire class or broad range of jobs as a result of her injuries, the court held that she had not established that she was significantly limited in the major life activity of working. *Id.*

To the extent that Horth relies upon the workers' compensation determination that he had a "temporary total disability," such reliance is misplaced. Courts have noted that "[s]ocial security determinations ... are not synonymous with a determination of whether a plaintiff is a 'qualified person' for purposes of the ADA." *Robinson,* 94 F.3d at 502 n. 2; (citing *Overton v. Reilly,* 977 F.2d 1190, 1196 (7th Cir.1992); *Smith v. Dovenmuehle Mortgage., Inc.,* 859 F.Supp. 1138, 1141–42 (N.D.Ill.1994)). Similarly, because the criteria in determining a workers' compensation award are different from those applied under the ADA, a workers' compensation award is not dispositive in an ADA case. In any event, findings by the workers' compensation judge support the conclusion that Horth is not "disabled" within the intent of the ADA. For example, the workers' compensation judge found that Horth was capable or performing sedentary or light duty work. (Plf's S.J. Mot. (Dkt. Entry 23) Exhibit C, ¶ 14(d).) Horth has not presented any medical or vocational evidence tending to show a significant limitation in the major life activity of working. Instead, he relies on summaries of the medical evidence presented in the workers' compensation proceeding. Even assuming that the workers' compensation judge's characterization of the medical evidence is competent on a summary judgment motion, it does not suffice to create a triable issue. Horth's own physician, Dr. Krywicki, opined that Horth could perform light duty work, a conclusion with which a consulting physician, Dr. Feinstein, concurred. (*Id.* ¶¶ 9 & 11.)

Although Horth's injuries certainly preclude a narrow field of jobs, he has failed to demonstrate that his injuries have eliminated him from an entire class or broad range of jobs within his geographic region based upon his skill, education, training, and knowledge. *See, e.g., McKay,* 878 F.Supp. at 1015 (noting that a court should consider a plaintiffs education background to determine the positions for which the plaintiff would be qualified). The record reflects that Horth was capable of performing "light duty" status at the time that he was laid off. Thus, Horth cannot show that his injuries have led to the elimination of an entire class or a broad range of jobs for which he is qualified.

In this regard, the record reflects that Horth has several advanced degrees, suggesting that he would be able to perform tasks of a less physical nature than his employment with General Dynamics. Horth has a Bachelor of Arts degree from DePauw University, a Bachelor of Foreign Trade degree from the American Graduate School of International Management, and a Master of Science degree in International Management from the American Graduate School of International Management. (Plf's Dep. (Dkt. Entry 20) at 7–8.) Horth also had positions utilizing his international management expertise with several companies over a fourteen year period: Sears, Roebuck & Company, Singer Sewing Machine Company, Smith, Corona, Marshom (SCM), and XM World Trade. (*Id.* at 10–20.) Although Horth indicated that his skills were not marketable in this region, there is no evidence in the record that Horth has attempted to obtain a job in a field that would utilize his management training. Given Horth's established ability to continue work in his previous field, albeit on "light duty" status, along with his impressive educational background, the record cannot support a finding that Horth's injuries have precluded him from employment in an entire class or a broad range of jobs. Moreover, the medical evidence reflected in the workers' compensation decisions essentially concerned the nature, severity and duration of Horth's impairments, but failed to address the significant factors of vocational history, educational background, the labor market for which Horth is suited, and the number and types of jobs from which Horth may be disqualified. In the absence of evidence on these significant matters, Horth has not presented a triable issue on whether he is significantly restricted in the major life activity of

working. *See Bolton,* 36 F.3d at 944. Because Horth has failed to establish that he has a disability which substantially limits one of his major life activities, General Dynamics motion for summary judgment will be granted.[9]

### D. The Discriminatory Intent Issue

 Even if there was a triable issue on the existence of a disability, summary judgment in favor of General Dynamics would be warranted because the undisputed facts presented on the parties' cross-motions for summary judgment could not support a reasonable inference that General Dynamics intended to discriminate against Horth because he had a "disability." Because the purpose of the ADA is to proscribe *intentional* discrimination based on disability, the absence of any evidence tending to show either (1) that General Dynamics' explanation for its decision is a *post hoc* fabrication to conceal its discrimination, or (2) that General Dynamics intended to discriminate against Horth because of his disability, compels entry of judgment in favor of General Dynamics.

It is undisputed that the Plan was negotiated with the UAW as a means through which General Dynamics' unemployed workers could be protected as a result of corporate downsizing. (Def's Stat. of Facts (Dkt. Entry 22) ¶ 37.) Thus, the Plan was never intended to compensate employees receiving other benefits from General Dynamics. (*Id.* ¶ 38.) Thus, General Dynamics maintains that Horth is not entitled to any early retirement benefits under the Plan because he was receiving workers' compensation benefits. (*Id.*) Convincingly, the UAW, Horth's union, also declared that Horth was not entitled to benefits under the Plan, a fact that Horth does not contest. (*id.* ¶¶ 43–44; Plf's Answer (Dkt. Entry 27) ¶¶ 43–44.)

Horth does not claim that the reason he was denied benefits—his receipt of workers' compensation—is a pretext for the real reason why General Dynamics denied him early retirement benefits. Instead, Horth relies solely upon the theory that General Dynamics has impermissibly excluded the entire class of General Dynamics' employees receiving workers' compensation from participation in the Plan.

 Essentially, Horth argues that the exclusion of workers' compensation recipients evidences an intent to discriminate based on disability.[10] Although it is true that every

9. Under 42 U.S.C. § 12101, a plaintiff can also have a "disability" if there is a record of the impairment or the plaintiffs employer regards him as having such an impairment. Horth has failed to present any evidence that would satisfy these additional prongs. It is undisputed that General Dynamics continued to employ Horth on "light duty" after his injuries. Further, the parties agree that Horth was not discharged because of his condition; instead, he was laid off because of his lack of seniority. Such a discharge fails to establish that the employer "regarded" the plaintiff as having a disability. *See Kelly,* 94 F.3d at 109; *Ray,* 85 F.3d at 229; *Wooten,* 58 F.3d at 386; *Dutcher,* 53 F.3d at 726; *Knox,* 942 F.Supp. at 531.

10. Horth's argument is akin to the disparate impact approach to discrimination claims. This approach may be used when an employer unreasonably:

(1) classifies a person based upon a disability in a manner that affects the person's employment opportunity; (2) uses standards that result in discrimination based upon a disability; (3) denies benefits based on a disability; or (4) uses criteria that tend to screen out disabled persons where the criteria are not job-related

and based upon business necessity. Accordingly, although actions may not be intentional, relief will be awarded when such actions have the effect of discriminating against protected individuals and are not grounded in business necessity.
*Harding v. Winn–Dixie Stores, Inc.,* 907 F.Supp. 386, 389 (M.D.Fla.1995) (citing *Griggs v. Duke Power Co.,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971)). Horth, however, does not assert that he is pursuing a disparate impact theory. Furthermore, Horth has not made the type of statistical presentation that typifies a disparate impact claim. *See, e.g., Ezold v. Wolf, Block, Schorr & Solis–Cohen,* 983 F.2d 509, 542–43 (3d Cir.1992), *cert. denied,* 510 U.S. 826, 114 S.Ct. 88, 126 L.Ed.2d 56 (1993). Finally, the disparate impact theory would appear to be applicable only if it could be said that General Dynamics did *not* give an employee with a disability "meaningful access" to the benefits that were being offered. *Cf. Alexander v. Choate,* 469 U.S. 287, 301, 105 S.Ct. 712, 720, 83 L.Ed.2d 661 (1985) (rejecting disparate impact approach to claim under the Rehabilitation Act of 1973, 29 U.S.C. § 794, where handicapped employees had equal access to a facially neutral benefit plan). In this case, a disabled person had equal access to the early retirement benefits so long as he or

employee receiving workers' compensation benefits is ineligible for special early retirement benefits under the Plan, it does not follow that every employee receiving workers' compensation benefits has a "disability" under the ADA. A determination of disability by a workers' compensation judge does not equate to a "disability" under the ADA. *Robinson*, 94 F.3d at 502 n. 2; (citing *Overton v. Reilly*, 977 F.2d 1190, 1196 (7th Cir.1992); *Smith v. Dovenmuehle Mortgage, Inc.*, 859 F.Supp. 1138, 1141–42 (N.D.Ill.1994)).

Further, General Dynamics' preclusion of those persons receiving workers' compensation benefits from participation in the Plan does not create an impermissible classification based on disability because General Dynamics has a business justification for its action. In the context of health insurance plans, the EEOC has provided that benefit plans can be based upon permissible economic considerations:

It is important to note that not all health-related plan distinctions discriminate on the basis of disability. Insurance distinctions that are not based on disability, and are applied equally to all insured employees, do not discriminate on the basis of disability and so do not violate the ADA.

(*EEOC: Interim Guidance on Application of ADA to Health Insurance* (June 8, 1993) Def's Opp.Brf. (Dkt. Entry 29) Exhibit A.) The Plan, as intended by General Dynamics and UAW, provided a supplemental means through which certain senior laid-off employees could receive a small benefit. This case demonstrates that the signatories of the Plan believed that a classification existed between two categories of laid off employees: (1) general laid off employees who qualify under the Plan and who were not receiving any other employment-related benefits from General Dynamics; and (2) laid off employees who

qualified for the Plan but who were also receiving workers' compensation benefits from General Dynamics. According to General Dynamics and UAW, only the first category is entitled to early retirement benefits because they are not receiving another company-paid benefit. Such a classification does not violate the ADA, even if only qualified employees receiving workers' compensation are precluded from early retirement benefits. As General Dynamics has noted, Horth would have been eligible to receive the early retirement benefits if his workers' compensation had been terminated.[11]

This case is factually similar to *Felde v. City of San Jose*, 839 F.Supp. 708 (N.D.Cal. 1994), *aff'd mem.*, 66 F.3d 335 (9th Cir.1995). In that case, the plaintiff retired from the City fire department with a service related disability. *Id.* at 709. As a result of a City plan, the plaintiff was awarded only 80% of his accumulated sick leave. *Id.* If the plaintiff had retired on a regular service basis, as opposed to a disability service basis, the plaintiff would have received 100% of his accumulated sick time. *Id.* The plaintiff challenged this classification, claiming that it discriminated on the basis of a "disability" in violation of the ADA. *Id.* The court stated that in order to constitute discrimination on the basis of a "disability," the City's plan would have to deny a qualified individual with a "disability" access to the benefit. *Id.* at 710. In this case, however, the court noted:

The ADA protects disabled individuals from being discriminated against *because* they are disabled. It, therefore, requires an employer to treat the qualified disabled and nondisabled workers equally in terms of the conditions and privileges of employment. The ADA does not, however, require employers to somehow compensate a disabled worker for his or her disabili-

---

she decided to forego workers' compensation benefits.

11. To this extent, J.R. Martin, the Human Resources Specialist for General Dynamics, wrote Horth a letter which stated in pertinent part:

Our division has requested that I respond to your written request for Special Early Retirement (which you filed directly with them). As I have told you on the numerous times you have previously questioned me regarding this

program, you must be on layoff to be eligible to apply for Special Early Retirement. You have been on Workers' Compensation and receiving Workers' Compensation benefits since 23 August 1991.... [U]ntil Workers' Compensation status is changed to a layoff status for at least 60 days, you will continue to be ineligible to apply for Special Early Retirement.

(Plf's Dep. (Dkt.Entry 20) Exhibit 8.)

ty.... The City's program did not exclude [the plaintiff].

*Id.* at 711 (emphasis in original). Because the City allowed the plaintiff the option of retiring on a regular service basis or disability service basis, the plaintiff could have continued his service and retired under the regular service basis.

In this case, Horth also had the right to choose the plan from which he would receive benefits. General Dynamics did not attempt to exclude Horth from receiving early retirement benefits. Indeed, General Dynamics indicated to Horth that he would be eligible for early retirement benefits as soon as his workers' compensation benefits ended.[12] Such a scheme does not violate the ADA. *Felde,* 839 F.Supp. at 711. As in *Felde,* General Dynamics has not foreclosed Horth from any benefit plan on the basis of his alleged disability. General Dynamics has never indicated that former employees with a "disability" cannot receive early retirement benefits. Indeed, an employee who became disabled while on layoff status due to a non-work-related cause would remain entitled to early retirement benefits. At most, General Dynamics is discriminating on the basis of workers' compensation, not a "disability." Horth has failed to present evidence tending to show an intent to discriminate on the basis of a "disability." Rather, the record shows that General Dynamics (as well as the UAW) made a reasonable business determination that former employees receiving workers' compensation benefits should not qualify for the special early retirement benefits.

Horth contends that there is no distinction between "layoff" status and "workers' compensation" status. (Plf's Answer (Dkt. Entry 27) ¶ 5.) Instead, Horth asserts that the term "workers' compensation status ... is a rhetorical contrivance designed to imply that such status would foreclose the possibility of the concurrent existence of another status." (*Id.*) In essence, Horth claims that he is entitled to dual benefits because he meets the basic requirements of the Plan.

Horth's claim, however, is for a violation of the ADA—not a breach of contract or ERISA violation. Horth must present some evidence that General Dynamics' interpretation of the contract reflects a discriminatory intent. A reference to the plain language of the contract simply will not suffice, especially in this case, where both negotiating parties agree that persons receiving workers' compensation benefits are not entitled to receive early retirement benefits under the Plan.[13] Because Horth has failed to present any evidence that General Dynamics' denial of early retirement benefits to former employees receiving workers' compensation benefits impermissibly discriminates against individuals with a "disability" under the ADA, General Dynamics' motion for summary judgment will be granted.

### III. CONCLUSION

Horth has suffered several work-related injuries, but the record will not support a finding that Horth has a "disability" under the ADA. Although Horth has some limitations, there has not been a showing that *any* of his major life activities have been substantially limited. Most significantly, it is undisputed that Horth was able to perform a "light duty" assignment prior to his termination. Horth has failed to provide any evidence which would suggest that the major life activity of working has been substantially limited by his injuries. Admittedly, there are a few specific jobs which Horth can no longer perform, but Horth has not demonstrated that his injuries have eliminated him from an entire class or broad range of jobs. Further, given Horth's educational background and training, the record will not support a finding that Horth's injuries have

---

12. In *Felde,* there was no dispute as to whether the plaintiff had a "disability" under the ADA. In this case, Horth relies solely upon the determination that he is entitled to workers' compensation to support his assertion that he has a "disability" under the ADA. As has been noted, a workers' compensation determination of disability does not require a finding that a plaintiff has a "disability" under the ADA.

13. In this regard, the interpretation of General Dynamics and the Union is consistent with the treatment of workers' compensation recipients who seek supplemental unemployment benefits. *See Horth v. General Dynamics Land Systems, Inc.,* No. 3:CV–93–1394, slip op. at 19 (M.D.Pa. June 22, 1995).

substantially limited his ability to work. Because Horth has failed to present evidence which demonstrates that he has a "disability" under the ADA, General Dynamics' motion for summary judgment will be granted.

Even if I assume that Horth has a "disability" under the ADA, there is no evidence that would support a reasonable inference that General Dynamics intended to discriminate against Horth on the basis of that disability. The early retirement benefits were meant to assist a narrow class of laid off workers who were not receiving any other benefits from General Dynamics. Horth's union, the UAW, who negotiated the Special Early Retirement Plan with General Dynamics, agreed that Horth was not entitled to early retirement benefits because he was receiving workers' compensation benefits. Further, Horth does not contest that General Dynamics refused his early retirement benefits because he was receiving workers' compensation benefits. Although Horth claims that a classification based upon workers' compensation benefits is impermissible, he fails to recognize that the definition of "disability" differs under the ADA and workers' compensation laws.

General Dynamics has not precluded "disabled" persons from receiving special early retirement benefits; instead, only person receiving workers' compensation benefits have been excluded from participation in the special early retirement plan. Because Horth has failed to present any evidence that General Dynamics impermissibly discriminated on the basis of a "disability" as defined by the ADA, General Dynamics' motion for summary judgment will be granted and Horth's motion will be denied.