Gary Wayne **WILLIAMSON**

v.

**HARTMANN LUGGAGE COMPANY, et al.[1]**

No. 3–96–1192.

United States District Court,
M.D. Tennessee,
Nashville Division.

Mar. 26, 1998.

---

1. Although the docket sheet reflects Hartmann Luggage Company and Lenox, Inc., as two separate defendants, there is actually only one defendant, Lenox, Inc., doing business as Hartmann International and Hartmann Luggage Company. *See* amended complaint (filed April 29, 1997; Docket Entry No. 9).

Michael Ray Jennings, Lebanon, TN, for Gary Wayne Williamson, plaintiff.

Lee Webb Campbell, II, William L. Harbison, Sherrard & Roe, Nashville, TN, for Hartmann Luggage Company, Lenox, Inc., defendants.

## *MEMORANDUM*

HIGGINS, District Judge.

The Court has before it the defendant's motion (filed January 30, 1998; Docket Entry No. 26) for summary judgment, its memorandum (Docket Entry No. 27) in support, the plaintiff's response (filed March 2, 1998; Docket Entry No. 36), and his memorandum (Docket Entry No. 37) in support.

The Court has subject matter jurisdiction over the plaintiff's claim under 42 U.S.C. § 12117.

For the reasons discussed below, the defendant's motion for summary judgment shall be granted.

### I.

The defendant, Lenox, Inc., doing business as Hartmann International and Hartmann Luggage Company, is a manufacturer of luggage and other accessories and is located in Lebanon, Tennessee. The plaintiff, Gary Wayne Williamson, began working for the defendant in 1981 as a chief industrial engineer. The plaintiff later became the defendant's industrial engineering manager and held the position of manufacturing engineering manager at the time he was terminated.

In 1979 or 1980, the plaintiff was diagnosed with chronic venous stasis with a history of phlebitis. At the time he began work for the defendant in 1981 and thereafter, the plaintiff's supervisors were aware that the plaintiff would have to take short periods of time off for his condition. Between 1981 and 1990, the plaintiff was away from work a

minimum of six to eight times. Between 1991 and 1993, the plaintiff had to miss work a maximum of six times, and between 1993 and 1995, the plaintiff missed work approximately two to four times. These missed work periods were usually one or two days in length. As a salaried employee, neither the plaintiff nor the defendant kept a record of the plaintiff's absences.

In 1995, the plaintiff's supervisor was Roger Justice, the defendant's vice president of manufacturing. It is undisputed that the plaintiff and Mr. Justice disagreed on issues concerning the company. On July 13, 1995, the plaintiff and Mr. Justice had a meeting to discuss the plaintiff's "negativism in regard to interpersonal relations with both supervisors and subordinates in Hartmann." Appendix of exhibits (filed January 30, 1998; Docket Entry No. 28) at exhibit 3. On July 20, 1995, Mr. Justice prepared a memo concerning their discussions for the plaintiff's personnel file. The memo essentially stated that the plaintiff was not supporting the defendant's manufacturing mission and goals, and that if this lack of support continued, Mr. Justice would have to make a change. Mr. Justice indicated that he could not continue to operate "while being undermined." *Id.*

On July 24, 1995, the plaintiff and Mr. Justice had a serious disagreement after Mr. Justice decided to increase the salary to be offered a new engineer. During the disagreement, the plaintiff told Mr. Justice that he was not planning to quit and that Mr. Justice would have to fire him if he wanted him to leave. The plaintiff told his wife that he might get fired because of the disagreement.

On July 25, 1995, Mr. Justice prepared a memorandum to Peter Lathrop, the defendant's president, regarding the argument between himself and the plaintiff. Mr. Justice recommended that the plaintiff be replaced. The plaintiff did not go to work on July 25, 1995, and instead went to see his doctor, Robert Jantz, M.D. Dr. Jantz suggested that the plaintiff stay off work until Monday, July 31, 1995. The plaintiff informed the defendant that he would return to work on July 31, 1995. The defendant contends that the decision to terminate the plaintiff had already been made at this point, and thus, the plaintiff would be informed of his termination on July 31, 1995, when he returned to work.

A severance letter dated July 31, 1995, had been prepared for the plaintiff. When the plaintiff returned to work that day, he was advised that he needed to come by Mr. Justice's office at a specific time. Before the meeting, the plaintiff wrote a note asking for additional medical leave and delivered it to Kathryn Stillwell, the director of human resources. Despite his request for medical leave, the plaintiff met with Mr. Justice as scheduled and asked him whether he was going to be fired. Mr. Justice denied that he was going to fire the plaintiff. However, the defendant alleges that because it wanted to ensure that the plaintiff would receive any benefits to which he was entitled, it granted the plaintiff's medical leave and postponed telling the plaintiff of its decision to terminate his employment.

In early August of 1995, the plaintiff submitted a leave request under the Family Medical Leave Act, which was granted by the defendant. The plaintiff received his full salary and benefits during his three-month FMLA leave.

The plaintiff alleges that in October of 1995, he asked Ms. Stillwell if he could return to work. He claims she told him he could return to work in November of 1995, but then later called him back and told him he could not return to work because his job description had changed. Through the defendant's short-term disability policy and the use of his accrued vacation time, the plaintiff continued to receive his salary and benefits through February of 1996. When this period of time expired, the plaintiff began receiving long-term disability benefits from Prudential Insurance Company based on his application of January 9, 1996. The plaintiff also made application for Social Security disability benefits, which was approved effective March 1, 1996. Prudential reduced its monthly payment to the plaintiff by the amount that Social Security began paying. On March 14, 1996, the plaintiff requested an extension of his medical leave, indicating that he was not sure when he would return to work. The plaintiff alleges that on April 2, 1996, he

arranged to have lunch with Ms. Stillwell regarding the possibility of his returning to work, and she informed him that he could not return to work with his restrictions but did not advise him of the defendant's decision to terminate him.

The defendant provided information in its memorandum that "[o]n October 3, 1996, the Equal Employment Opportunity Commission ("EEOC") issued its determination that plaintiff's 'impairment [is] not a disability as defined by the ADA.'" Defendant's memorandum (Docket Entry No. 27) at 10.[2] On December 31, 1996, the plaintiff filed a complaint in this Court alleging that the defendant refused to allow him to return to his position as a manufacturing engineering manager because of a leg condition known as chronic venous insufficiency, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* The plaintiff also alleges violations of 42 U.S.C. §§ 1981 and 1983 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* By letter dated March 25, 1997, the plaintiff resigned his employment with the defendant and indicated that he had taken another job.

The defendant moves for summary judgment on the plaintiff's ADA claim on the grounds that (1) he cannot establish a prima facie case of discrimination under the ADA; and (2) the plaintiff is estopped from pursuing his ADA claim because he applied for and is receiving disability benefits from the Social Security Administration for his leg condition.

The defendant also moves for summary judgment on the plaintiff's Section 1981 claim on the grounds that disability discrimination is not covered by 42 U.S.C. § 1981. Furthermore, the defendant moves for summary judgment on the plaintiff's Section 1983 claim on the grounds that the plaintiff has made no showing of state action on the part of his employer and because an ADA claim cannot be brought under 42 U.S.C. § 1983. Finally, the defendant moves for summary judgment

on the plaintiff's Title VII claim on the grounds that a violation of the ADA does not state a claim for relief under Title VII and because Title VII does not protect against discrimination based on a disability.

## II.

As provided by Federal Rule of Civil Procedure 56(c), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202, 211 (1986). In its consideration of the evidence, the Court must view all facts and inferences to be drawn therefrom in the light most favorable to the non-moving party. *Davidson & Jones Dev. Co. v. Elmore Dev. Co.,* 921 F.2d 1343, 1349 (6th Cir.1991).

In order to prevail on a summary judgment motion, the moving party bears the burden of proving the absence of a genuine issue of material fact concerning an essential element of the opposing party's action. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265, 274 (1986); *Davidson & Jones Dev. Co.,* 921 F.2d at 1349; *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989). A dispute about the material fact must be genuine, that is, "the evidence is such that a reasonable jury could return a verdict for the non-moving party."[3] *Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. at 2510, 91 L.Ed.2d at 211–12. Since the preponderance of the evidence standard is used in this determination, more than a mere scintilla of evidence in support of the plaintiff's position is required. *Id.* at 252, 106 S.Ct. at 2512, 91 L.Ed.2d at 214.

Once a motion for summary judgment has been made, "the non-moving party bears the

---

2. However, the defendant provided no citation for this information or for the quoted language, and the Court was unable to locate this information in the record.

3. The Supreme Court further explained that a court must determine "whether the evidence

presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby,* 477 U.S. at 251–52, 106 S.Ct. at 2512, 91 L.Ed.2d at 214.

responsibility to demonstrate that summary judgment is inappropriate under Rule 56(e)." *Davidson & Jones Dev. Co.*, 921 F.2d at 1349. The non-moving party may not merely rest on conclusory allegations contained in the complaint, but must respond with affirmative evidence supporting its claims and establishing the existence of a genuine issue of material fact. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553, 91 L.Ed.2d at 274; *Cloverdale Equip. Co. v. Simon Aerials, Inc.*, 869 F.2d 934, 937 (6th Cir.1989). While the disputed issue does not have to be resolved conclusively in favor of the non-moving party to defeat summary judgment, "sufficient evidence supporting the claimed factual dispute" must be shown, thereby requiring resolution of the parties' differing versions of the truth by a jury or judge. *Liberty Lobby*, 477 U.S. at 249, 106 S.Ct. at 2510, 91 L.Ed.2d at 212; *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569, 592 (1968).

### III.

#### A. ADA Claim

■ In the absence of direct evidence, a plaintiff may establish a prima facie case of discrimination under the ADA by showing that he is a disabled person within the meaning of the Act; that he is otherwise qualified to perform the essential functions of his job with or without reasonable accommodation; that he suffered an adverse employment decision because of his disability; that the employer knew or had reason to know of his disability; and after the plaintiff was terminated, the position remained open, or the disabled individual was replaced. *McKay v. Toyota Motor Mfg., U.S.A., Inc.*, 110 F.3d 369, 371 (6th Cir.1997); *Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1185 (6th Cir.1996).

The defendant argues that the plaintiff cannot establish a prima facie case of discrimination under the ADA because he cannot show that he was disabled within the meaning of the ADA.[4,5] The ADA defines "disability" as (1) a physical or mental impairment that substantially limits one or more of the major life activities; (2) a record of such an impairment; or (3) being regarded as having such an impairment. 42 U.S.C. § 12102(2).

"It is the Plaintiff's position that his condition of chronic venous stasis with a history of phlebitis does 'substantially limit' his major life activities." Plaintiff's response (Docket Entry No. 37) at 12. The regulations define the phrase "substantially limits" as:

(i) Unable to perform a major life activity that the average person in the general population can perform; or

(ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1). The plaintiff alleges in his complaint that his condition known as " 'chronic venous insufficiency' is a physical impairment that substantially limits one or more of an individual's major life activities, such as standing or walking." [6] Com-

---

4. The defendant also argues that the plaintiff cannot establish a prima facie case because he cannot show that he was denied a reasonable accommodation or subjected to an adverse employment decision based solely on his disability. Because the Court finds that the plaintiff cannot establish the first element of a prima facie case under the ADA, it will not address the other arguments put forth by the defendant.

5. As another independent ground on which the defendant bases its motion for summary judgment, it argues that the plaintiff is estopped from establishing that he is a qualified individual under the ADA because he applied for and is receiving long term disability benefits from Prudential and the Social Security Administration on the basis of his certification that he could not work. Because the Court will grant the defendant's motion for summary judgment on the grounds that the plaintiff cannot establish a prima facie case under the ADA, it will not address the defendant's other ground for summary judgment.

6. Although the plaintiff does not allege that his condition substantially limits the major life activity of working, he discusses how the limitation on standing and walking has a direct affect on the types of jobs that he can hold. The Court finds that the plaintiff's condition clearly does not prevent him from working, as he held the position of an engineer for several years after being diagnosed with his impairment. Furthermore, after leaving the defendant's employment,

plaint (filed December 31, 1996; Docket Entry No. 1) ¶ 15.

Major life activities include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). The interpretive guidelines explain that the list "is not exhaustive" and that "other major life activities include, but are not limited to, sitting, standing, lifting, [and] reaching." 29 C.F.R. Pt. 1630, App. Section 1630.2(i). In determining whether a person is substantially limited in a major life activity, the court should consider the nature and severity of the impairment; the duration or expected duration of the impairment; and the permanent or long term impact, or expected permanent or long term impact of or resulting from the impairment. 29 C.F.R. § 1630.2(j)(2).

In *Penny v. United Parcel Service*, 128 F.3d 408 (6th Cir.1997), the Sixth Circuit reviewed the few cases defining what constitutes a substantial limitation on a person's ability to walk and found that these cases make it "clear that moderate difficulty or pain experienced while walking does not rise to the level of a disability." *Id.* at 415. The Court summarized these cases as follows:

> In *Kelly*, for instance, the plaintiff suffered from severe post-traumatic degenerative joint disease of the right hip, which caused him to walk slowly, especially when climbing stairs. After reviewing relevant EEOC guidelines, the court concluded that this impairment did not amount to a disability. In *Richardson v. William Powell Co.*, the court held that degenerative arthritis that caused a noticeable limp and difficulty climbing stairs also was not a disability under the ADA because the plaintiff failed to show how it substantially

limited any major life activity. Likewise, the plaintiff in *Stone v. Entergy Services, Inc.*, was found not to be disabled despite having muscle weakness, residual partial paralysis from polio, one leg longer than the other, and an approximate total body impairment of 15%. The Court reasoned that:

> Although plaintiff cannot walk briskly, and has some trouble climbing stairs, I find that his ability to walk is not substantially limited nor significantly restricted. Additionally, the record clearly indicates that plaintiff's ability to work is not affected by his impairment. His deposition testimony provides that plaintiff has been employed continuously since graduating from college, and is currently employed.

> Finally, in *Penchishen v. Stroh Brewery Co.*, a court found that a plaintiff who could walk at only one-half her normal speed following an automobile accident was not substantially limited in the major life activity of walking.

*Id.* (citations omitted).

Based on these cases, the *Penny* Court found that the plaintiff was not disabled despite evidence that he limped on occasion, that it hurt him to do his job everyday, and that it sometimes hurt to walk. The Court noted that the plaintiff was able to go fishing and hunting and could satisfactorily fulfill his job duties, despite his impairments. Furthermore, the assessments of the plaintiff's treating physicians were either contradictory as to the plaintiff's standing and walking capability or simply failed to show that the plaintiff had anything other than a moderate difficulty in walking, running, or climbing

---

the plaintiff applied to several different prospective employers for different types of jobs, testifying in his deposition that he would not have applied if he felt he could not have performed these jobs. Appendix of exhibits (Docket Entry No. 28) exhibit 1 at 250. By March of 1997, the plaintiff had accepted employment as an operations manager for a convenience store chain, in which he spent approximately 30% of his time "[u]p walking and visiting in the stores." *Id.* at 173. As the plaintiff has no basis for arguing that his condition substantially limits the major

life activity of working, the Court focuses only on whether his condition substantially limits the activities of walking and standing. *See Nieves v. Individualized Shirts*, 961 F.Supp. 782, 794 (D.N.J.1997) (noting that the plaintiff could not have contended that her varicose veins affected her ability to work because she did not satisfy the requirement in the regulations that an individual be significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes, as she had held jobs as a teacher's aide and a bus driver).

stairs.[7]

In the instant case, Dr. Jantz began treating the plaintiff on July 25, 1995. Appendix of exhibits (filed March 2, 1998; Docket Entry No. 40) exhibit 5 at 4. After assessing that the plaintiff had chronic venous stasis with a history of phlebitis, Dr. Jantz opined that the plaintiff should take a few days off and could return to work on July 31, 1995. *Id.* at 5–8. Dr. Jantz's treatment notes of July 25, 1995, do not reveal that he had any discussion with the plaintiff about taking an extended period of time off from work for his condition. Dr. Jantz testified that if he had had a discussion with the plaintiff about needing to take an extended period of time off from his job, he would have noted that in his treatment notes. Appendix of exhibits (Docket Entry No. 28) exhibit 7 at 9–10.

In November of 1995, Dr. Jantz opined that the plaintiff should not stand or walk more than half of his workday. *Id.* at 18. Dr. Jantz also testified that the plaintiff's condition would affect his ability to do other daily activities such as hiking or running in a marathon. Appendix of exhibits (Docket Entry No. 40) exhibit 5 at 31–32. Although Dr. Jantz characterizes the plaintiff's impairment as a chronic condition, he testified that the restrictions he imposed applied only for the period of time from November of 1995 through January of 1996. Appendix of exhibits (Docket Entry No. 28) exhibit 7 at 24.

First, the plaintiff seems to argue that because Dr. Jantz limited his standing or walking to no more than half a workday, his condition substantially limits the major life activity of walking and/or standing. In *Burnett v. Western Resources, Inc.*, 929 F.Supp. 1349 (D.Kan.1996), the court rejected such an idea, agreeing with the defendant's argument that

> plaintiff's restriction on walking no more than four hours per day is not a substantial limitation on the major life activities of walking or working. An average person in the general population would not be able to walk more than four hours per day without experiencing some discomfort and the limitation does not restrict plaintiff's ability to perform jobs other than the meter reader job.

*Id.* at 1356. Thus, the Court finds that Dr. Jantz's limitation on the plaintiff's ability to stand or walk more than half a workday does not in and of itself translate to a substantial limitation on the major life activities of walking and/or standing.[8]

Second, although Dr. Jantz generally stated that the plaintiff's daily activities would be affected by his impairment, the plaintiff's testimony contradicts his opinion. The plaintiff testified in his deposition that other than the occasional need to take a short period of time off, his leg condition did not impact his ability to do his job. He further testified that his activities outside of work were not impacted "because my activities outside of work really haven't changed over the years." Appendix of Exhibits (Docket Entry No. 28) exhibit 1 at 60. The plaintiff was asked:

> Q. Still doing some yard work, work around the house, just general things that we all do?
>
> A. Sure, sure, yes.

---

7. The *Penny* Court came to this conclusion despite assessments by two physicians that the plaintiff had sustained a permanent partial impairment to the body as a whole of 14% and experienced increased low back pain when continually walking up hills or steps, and a permanent partial impairment of 10% and would have long term difficulties with running, walking, and lifting more than 25 pounds on a repetitive basis, respectively. *Penny*, 128 F.3d at 416.

8. The Court refers the plaintiff to a case in which the plaintiff suffered from impairments far more restrictive than the impairment alleged by Mr. Williamson and the district court still found that "[i]n terms of the major life activities of walking, lifting, standing, or sitting, Horth has not produced evidence to demonstrate that his limita-

tions are any more than 'comparatively moderate restrictions' ... [and] when compared to the average person, [do not] significantly limit one of his major life activities." *Horth v. General Dynamics Land Sys. Inc.*, 960 F.Supp. 873, 878 (M.D.Pa.1997). In *Horth*, the plaintiff was unable to sit or stand for more than two hours at a time, had difficulty walking and walked with a limp, had difficulty continually lifting objects over twenty pounds, was adversely affected by certain atmospheric pressure systems, and suffered from temporary total disability as a result of a right shoulder sprain, a rotator cuff tear, lateral epicondylitis of the right elbow, and a preexisting degenerative condition in both knees. *Id.*

Q. And you continue to be able to do that?

A. Yes, on—do you mean even today or during that period of time?

Q. Well, through July '95.

A. Oh, yes.

Q. What about today, is it any different?

A. No, you wouldn't think so. No, I'm able to do the same type things around the house today.

Q. So other than these occasional flare-ups that you've described for me, there's no other impact on your life with respect to the ability to work or the ability to do anything else, is that fair to say?

A. I guess that's fair to say.

*Id.* at 60–61. The Court finds that based on the plaintiff's own admissions, his impairment does not significantly limit his major life activities. *See Kocsis v. Multi–Care Management, Inc.*, 97 F.3d 876, 884 (6th Cir.1996) (holding that the plaintiff was not necessarily under a disability from arthritis and multiple sclerosis where she testified in her deposition that *none of her impairments* "limited her activity in any way. By her own admission, therefore, she does not have an impairment that limits her major life activities.").

In addition, the plaintiff testified in his deposition that there was some discomfort and pain associated with his condition during periods of exacerbation but "nothing that was unbearable." Appendix of exhibits (Docket Entry No. 28) exhibit 1 at 34. The plaintiff also testified that during periods of exacerbation, "you could still stand up and walk, it was just better to be off your feet a day or two to help the situation." *Id.* at 35. The Court finds, as did the Court in *Penny*, that "moderate difficulty or pain experienced ... does not rise to the level of a disability." *Penny*, 128 F.3d at 415.

The Court finds that the plaintiff cannot show that he is substantially limited in any major life activity and thus fails to establish that he is disabled within the meaning of the ADA. Accordingly, as the plaintiff cannot satisfy an essential element of his prima facie case under the ADA, the defendant's motion

for summary judgment with regard to the plaintiff's ADA claim shall be granted.

#### B. Other Claims

The defendant moves for summary judgment on the plaintiff's claims brought under Section 1981, Section 1983, and Title VII. The plaintiff has not responded to the defendant's motion for summary judgment on any of these claims.

In *Kocsis*, the Sixth Circuit noted that the district court dismissed the plaintiff's claims under Section 1981, Section 1983, and Title VII for failure to state a claim upon which relief can be granted where the plaintiff only alleged that her employer had denied her a promotion, demoted her, failed to accommodate her, and constructively discharged her because of her disability. *Kocsis*, 97 F.3d at 880–81, n. 9. Likewise, the plaintiff in this case has failed to allege discrimination on any basis other than disability.

 The Court finds that the plaintiff's Section 1981 claim fails as a matter of law. *See Barge v. Anheuser–Busch, Inc.*, 87 F.3d 256, 258 (8th Cir.1996) ("Because gender and disability discrimination are not cognizable under § 1981, the district court granted Anheuser Busch's motion to dismiss."). Furthermore, the Court notes that as for the plaintiff's Section 1983 claim, the plaintiff has failed to allege that the defendant acted under color of state law and, thus, has no viable claim under Section 1983. *See Gray v. Toshiba Am. Consumer Products, Inc.*, 959 F.Supp. 805, 807 (M.D.Tenn.1997) ("Section 1983 requires that the defendant act under the color of state authority. Plaintiff has alleged no facts that would indicate that Defendant acted in any respect other than as a wholly private actor. As such, the Court finds that Plaintiff's Section 1983 claim cannot proceed.") (citation omitted). Finally, the Court finds that the plaintiff's claim of being discharged on the basis of his disability is not a cognizable claim under Title VII, as Title VII only covers claims alleging discrimination based on race, color, religion, sex, or national origin, and not disability. *See* 42 U.S.C. § 2000e–2(a).

Accordingly, the defendant's motion for summary judgment on the plaintiff's Section

1981 claim, Section 1983 claim, and Title VII claim shall be granted.

## IV.

As the defendant has established the absence of a genuine issue of material fact with regard to the plaintiff's ADA claim and the plaintiff has not responded with affirmative evidence supporting his claim and establishing the existence of a genuine issue of material fact, the plaintiff has failed to show that a reasonable jury could find that he has an impairment that substantially limits a major life activity. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553, 91 L.Ed.2d at 274. Accordingly, the Court finds that the plaintiff cannot prevail on his prima facie case of discrimination under the ADA, and the Court shall therefore grant the defendant's motion for summary judgment on the plaintiff's ADA claim. Furthermore, the Court shall grant the defendant's motion for summary judgment on the plaintiff's claims brought under Sections 1981 and 1983 and Title VII.

An appropriate order will be entered.

## *ORDER*

In accordance with the memorandum contemporaneously entered, the defendant's motion (filed January 30, 1998; Docket Entry No. 26) for summary judgment is granted.

Accordingly, this action is dismissed with prejudice.

Entry of this order shall constitute the judgment in this action.[1]

It is so ORDERED.

---

1. Pursuant to the notice of withdrawal of its motion (filed January 30, 1998; Docket Entry No. 30), the defendant's motion for an order requiring the Social Security Administration to provide documents related to the plaintiff and for leave to file a supplemental brief is withdrawn.